# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP142-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Charles W. Richey, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 401 Wis. 2d 195, 973 N.W.2d 18
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | December 9, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 6, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Marathon |
| JUDGE: | Gregory J. Strasser |

JUSTICES:
DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and HAGEDORN, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Vicki Zick* and *Zick Legal, LLC*, Johnson Creek. There was an oral argument by *Vicki Zick*.

For the plaintiff-respondent, there was a brief filed by *Nicholas S. DeSantis*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Nicholas S. DeSantis*, assistant attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP142-CR
(L.C. No. 2018CF0510)

STATE OF WISCONSIN          :       IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

**FILED**

  v.

**DEC 9, 2022**

Charles W. Richey,

Sheila T. Reiff
Clerk of Supreme Court

    Defendant-Appellant-Petitioner.

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and HAGEDORN, J., joined.

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 REBECCA FRANK DALLET, J., The Fourth Amendment requires a police officer to have particularized reasonable suspicion that a crime or non-criminal traffic violation took place before performing a traffic stop. Here, a stop based on the generic description of a Harley-Davidson motorcycle recently seen driving erratically in the area fell short of that threshold. We therefore reverse the court of appeals' decision.

I

¶2    Officer Alexis Meier was on patrol in the Village of Weston at 10:59 PM on a Saturday night in late April. Over the radio, she heard a report that a sheriff's deputy was investigating a disabled motorcycle at a nearby intersection. After just fifteen seconds, the deputy cleared that stop without explanation. Five minutes later, at 11:04 PM, that same sheriff's deputy told nearby officers to be on the lookout for a Harley-Davidson motorcycle driving erratically and speeding north on Alderson Street (near the intersection with Jelenik Avenue)——approximately a mile away from the location he had given for the disabled motorcycle. The sheriff's deputy did not give any additional details about either the motorcycle or its driver. Officer Meier later said that she believed that the motorcycle the deputy saw on Alderson Street was fleeing police.

¶3    Five minutes after the deputy's report, at 11:09 PM, Officer Meier spotted a motorcycle driving east on Schofield Avenue a little more than a block west of the intersection with Alderson Street——about a half-mile from the reported location of the speeding Harley. Traffic was light at that time of night. Additionally, Officer Meier had seen relatively few motorcycles out that early in the year and none around the time of the

2

deputy's report.[1] Meier looked up the registration, which showed that it was a Harley-Davidson registered to Richey. She followed the Harley-Davidson for several blocks, but did not see any erratic driving, speeding, or other traffic violations. Meier nevertheless performed a traffic stop, suspecting that this Harley-Davidson was the one seen driving erratically on Alderson Street five minutes earlier.

¶4 After the stop, Officer Meier learned that Richey was the driver and developed evidence supporting an arrest for his eighth operating while intoxicated (OWI) offense. See Wis. Stat. § 346.65(2)(am)6. (2017-18).[2] Richey moved to suppress that evidence, arguing that the stop violated the Fourth Amendment because it was not supported by reasonable suspicion.

¶5 At the suppression hearing, Officer Meier testified to the facts described above and marked the location of the relevant events on a printout from Google Maps. The circuit

---

[1] Officer Meier's testimony at the suppression hearing was somewhat inconsistent on this point. Although she repeatedly testified that she had not "observed any motorcycles around th[e] time" of the sheriff's deputy's report, she also said at one point that she did not notice other motorcycles on the road during her shift, which began at 6:00 PM. She later clarified, however, that she only started looking for motorcycles after receiving the deputy's report and did not recall if other motorcycles were out that day. The circuit court did not make a finding of fact about whether Officer Meier saw other motorcycles during her shift.

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version.

court[3] received that map into evidence, but the copy contained in the record is faded, and would not be easily readable in this opinion.   To aid the reader, we instead include a map we reproduced from that one.   As with the map Officer Meier marked, ours labels the location of the relevant events as follows:   The word "disabled" shows where the sheriff's deputy investigated the disabled motorcycle at 10:59 PM; the north-pointing arrow and letter "D" marks the spot and direction of travel of the Harley-Davidson the sheriff's deputy saw driving erratically and at high speed at 11:04 PM; "A" identifies the place where Meier first saw Richey's Harley-Davidson at 11:09 PM; and "S" signifies the location of the stop moments later.

---

[3] The Honorable Gregory J. Strasser of the Marathon County Circuit Court presided.

4



¶6    The circuit court denied Richey's suppression motion, concluding that Officer Meier had reasonable suspicion to stop Richey.  In doing so, the circuit court relied in large part on the fact that Richey's motorcycle was a Harley-Davidson, that Richey was driving in the same general area as the reported erratic driver five minutes after the deputy's report, and the officer's testimony that there were relatively few motorcycles on the road that early in the year and at that time of night. The court of appeals affirmed on substantially similar grounds. See State v. Richey, 2021AP142-CR, unpublished slip op., at ¶¶7-9 (Wis. Ct. App. Feb. 15, 2022).

5

II

¶7 Whether officers had reasonable suspicion to conduct a traffic stop is a legal question that we review de novo, accepting the circuit court's findings of fact unless they are clearly erroneous. See State v. Genous, 2021 WI 50, ¶10, 397 Wis. 2d 293, 961 N.W.2d 41.

III

¶8 The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." Investigative stops, including traffic stops, are seizures and must therefore comply with the Fourth Amendment. See State v. Floyd, 2017 WI 78, ¶20, 377 Wis. 2d 394, 898 N.W.2d 560.

¶9 To conduct an investigative stop, the police must have "reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also State v. Houghton, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143 (explaining that traffic stops can also be based on reasonable suspicion of a non-criminal traffic violation). Reasonable suspicion must be founded on concrete, particularized facts warranting suspicion of a specific individual, not "'inchoate and unparticularized suspicion[s] or hunch[es].'" Wardlow, 528 U.S. at 124 (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). We assess reasonable suspicion in light of the totality of the circumstances. See United States v. Cortez, 449 U.S. 411, 417-18 (1981). Thus, we look at the "whole picture"

6

to determine whether the officer had reasonable suspicion, not each fact in isolation. Id. at 417.

¶10 The whole picture here includes the following information known to Officer Meier before she stopped Richey's motorcycle:

- A Harley-Davidson was driving erratically and speeding north on Alderson Street towards Schofield Avenue five minutes earlier.

- Meier first saw Richey's motorcycle driving east on Schofield Avenue a little more than a block west of the intersection with Alderson Street——about a half-mile from the reported location of the speeding Harley.

- Richey's motorcycle was a Harley-Davidson and was the only motorcycle she saw around the time of the deputy's report.

- Meier followed Richey for several blocks but did not observe any speeding, erratic driving, or other traffic violations.

- Traffic was light that night, and Meier had seen relatively few motorcycles out that early in the year.

It is undisputed that the only reason Officer Meier pulled Richey over is she suspected he was the erratic driver the deputy saw five minutes earlier. The question is whether that suspicion was reasonable.

¶11 Although we acknowledge that it is a close question, we hold that the stop was not supported by reasonable suspicion. To clear the reasonable-suspicion threshold, Officer Meier's suspicions had to be particularized; she needed concrete reasons

7

for believing that Richey's Harley-Davidson and the one seen five minutes earlier speeding north on Alderson Street were one and the same. See Cortez, 449 U.S. at 418 (reasonable suspicion requires reason to believe "that the particular individual being stopped [wa]s engaged in wrongdoing"). But the sheriff's deputy's generic description of a Harley-Davidson gave her very little to work with. See State v. Guzy, 139 Wis. 2d 663, 677, 407 N.W.2d 548 (1987) (explaining that "the particularity of the description of the offender or the vehicle in which he fled" is a relevant part of the reasonable-suspicion analysis (quotation omitted)). Except for the manufacturer, she knew nothing specific about the Harley the deputy saw——not the model, type,[4] size, or color, let alone a license plate number. Nor did she know anything about the driver, what he or she was wearing, whether he or she wore a helmet, or even whether the driver appeared to be a man or a woman. And although she followed Richey for several blocks before initiating the stop, there is no indication that she radioed the deputy during that time to ask for more details.

¶12 The State nevertheless argues that Officer Meier's suspicions were particularized because Richey's motorcycle "fit a highly specific and particular description." Namely, it was a Harley driving in the same general area as the deputy's report

---

[4] At the suppression hearing, Officer Meier was asked whether the deputy "indicate[d] the type of Harley-Davidson, like, a Sportster, Road Glide, Softail, Touring big bike; anything like that?" She responded "[n]o[t] that I recall, no."

late in the evening and at a time of year when relatively few motorcycles were on the roads. These facts are part of the totality of the circumstances, but they are not enough to transform Officer Meier's hunch into particularized reasonable suspicion. See Guzy, 139 Wis. 2d at 677 (stating that "the size" and "number of persons about in th[e] area" are relevant to determining reasonable suspicion (quotation omitted)). For starters, the "highly specific" description of a Harley-Davidson could apply to a large number of vehicles. See generally United States v. Street, 917 F.3d 586, 594 (7th Cir. 2019) ("Terry does not authorize broad dragnets . . . . Without more, a description that applies to large numbers of people will not justify the seizure of a particular individual."). After all, Wisconsin is the home of Harley-Davidson, and it is one of, if not the most popular manufacturers of motorcycles in Wisconsin. Although reasonable suspicion is a low bar, it is not so low that it allows the State to stop so many otherwise law-abiding citizens based on such a generic description. See id. Additionally, although the circuit court found that it was "the beginning, very beginning, of [motorcycle] season," it also acknowledged that "[c]ertainly, people drive their bikes in April."

¶13 That Richey's Harley was spotted close to the location of the deputy's call just five minutes later does not add much to the particularity of Officer Meier's suspicions either. Although proximity in time and place to a report of criminal activity can, under some circumstances, provide some of the

particularity that is otherwise lacking in a report of criminal activity, see State v. Nimmer, 2022 WI 47, ¶¶31-32, 402 Wis. 2d 416, 975 N.W.2d 598, Richey's exact location and direction of travel raise more questions than they answer. See Guzy, 139 Wis. 2d at 677 (identifying "the elapsed time since the crime occurred," "known or probable direction of . . . flight," and "observed activity by the particular person stopped" as factors in the totality of the circumstances (quotation omitted)). Returning to the map above, the letter "D" marks where the deputy saw the erratic driver, and the arrow shows the direction of travel. Although Richey was seen in that general area five minutes later, at the spot marked with the letter "A," we note that Richey was headed east on Schofield Avenue towards the intersection with Alderson Street at that time. In other words, Richey was driving towards the reported location of the erratic and speeding driver when Officer Meier first saw him. Given that Officer Meier thought the erratic driver was fleeing police that would be a strange choice. Additionally, counsel for both parties acknowledged at oral argument that the speed limits in the area were likely the 25 or 30 mile-per-hour limits applicable to most city streets. Even at normal speed, it would take only about a minute to travel from the location of the deputy's report to where the officer saw Richey, and a driver fleeing police at high speed could have gone much farther in the same amount of time. Thus, in order for Richey to have been the subject of the deputy's report, he would have had to have driven north on Alderson Street at high

10

speed, ridden around the general area for several minutes, and eventually looped back in the direction he came from while now driving normally. This unlikely sequence of events, when coupled with the deputy's generic description of a Harley-Davidson headed north on Alderson Street, demonstrates that Officer Meier's suspicions were not sufficiently particular to Richey. See, e.g., United States v. Jones, 998 F.2d 883, 884-85 (10th Cir. 1993) (concluding that a description of a black Mercedes containing two African-American men was not particularized because officers had no additional details about the vehicle and stopped a black Mercedes "not traveling from the direction of" the report "on a street that, by the officers' own admission, could only be reached . . . by a circuitous route").

¶14 Our conclusion that Officer Meier lacked reasonable suspicion is further illustrated by one of the cases on which the State principally relies, State v. Rissley, 2012 WI App 112, 344 Wis. 2d 422, 824 N.W.2d 853. In Rissley, a homeowner reported that a man driving a beige Chevrolet minivan confronted him in his driveway late at night. See id., ¶¶2-3. The homeowner immediately called police, describing both the van and its driver, and relaying details about the route it took as it drove away from his house. See id., ¶3. Police were dispatched, and saw a beige van along the route the homeowner described while he was still on the phone with the dispatcher. See id., ¶¶4-5. Once police caught up with the driver, never having lost sight of him, they stopped the van. See id., ¶5. The court of appeals held that the officer in Rissley had

11

reasonable suspicion, while also noting that "this is not a situation where a citizen simply reports the make and color of the car and the direction initially traveled and then loses sight of the vehicle so that the pursuing officer has to use some combination of logic and guesswork to locate the fleeing vehicle." Id., ¶16.

¶15 This case is more like the court of appeals' hypothetical in Rissley than it is like the facts of that case. Here, the sheriff's deputy reported a Harley-Davidson driving erratically north on Alderson Street at high speed and then lost sight of it. And Officer Meier had to use a combination of logic and guesswork to locate that motorcycle. The problem is that, unlike in Rissley, the deputy gave Officer Meier little on which to ground her logic. She did not know anything about the motorcycle other than that it was a Harley-Davidson and she knew nothing about its driver. And the timing and location at which Officer Meier first saw Richey did not fill those gaps, since these facts support only a tenuous inference that Richey was the motorcyclist Officer Meier was looking for.[5] Accordingly, we hold that, in light of the totality of the circumstances,

---

[5] Officer Meier called the sheriff's deputy after stopping Richey. After he arrived on the scene, he confirmed that Richey was not the motorcyclist he saw earlier on Alderson Street. Because she did not know that at the time of the stop, however, it is not relevant to the reasonable-suspicion analysis. See State v. Nimmer, 2022 WI 47, ¶26, 402 Wis. 2d 416, 975 N.W.2d 598 ("We must 'consider everything observed by and known to the officer[]'" that performed the stop (quoting State v. Genous, 2021 WI 50, ¶10, 397 Wis. 2d 293, 961 N.W.2d 41)).

12

Officer Meier lacked reasonable suspicion to perform the stop. We therefore reverse the decision of the court of appeals and remand to the circuit court with instructions to vacate the judgment of conviction and to grant Richey's motion to suppress.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶16 PATIENCE DRAKE ROGGENSACK, J. *(dissenting)*. Reasonable suspicion is a common-sense test based on the totality of the circumstances known to the officer at the time of the seizure. Stated otherwise, "was the action of law enforcement officers reasonable under all the facts and circumstances present[.]" State v. Guzy, 139 Wis. 2d 663, 679, 407 N.W.2d 548 (1987). Reasonable suspicion includes all factual circumstances and the reasonable inferences arising from those facts. Terry v. Ohio, 392 U.S. 1, 21 (1968). I conclude that the record before us fully supports reasonable suspicion to stop Charles W. Richey; and therefore, evidence of Richey's eighth Operating While Intoxicated (OWI) violation was admissible. There is nothing in the record that allows us to conclude Officer Meier's inference that Richey was the motorcyclist her colleague warned of was unreasonable. Because the majority opinion refuses to accept reasonable inferences from undisputed facts, it enables Richey to achieve suppression of evidence of drunk driving that was apparent after he was stopped. Accordingly, I respectfully dissent.

## I. BACKGROUND

¶17 On April 28, 2018, at approximately 11:00 p.m., Deputy D'Acquisto of the Marathon County Sheriff's Office broadcast over police radio that there was a disabled motorcycle at the intersection of Business 51 and Schofield Avenue in the Village of Weston. Deputy D'Acquisto cleared that report but almost immediately asked officers to check the area for a motorcycle that he observed driving erratically at a high rate of speed

1

northbound on Alderson Street from Jelinek Avenue in the Village of Weston. He described the motorcycle as a Harley-Davidson motorcycle.

¶18 When Officer Meier received the report from Deputy D'Acquisto, she testified that she had "not observed any motorcycles" in her area, where the traffic "was very light." Shortly after hearing from Deputy D'Acquisto, she saw a motorcycle "in the same area as where Deputy D'Acquisto had stated he last saw the motocycle." Officer Meier said the motorcycle "was within a half mile" of where Deputy D'Acquisto reported seeing the motorcycle.

¶19 When Officer Meier observed the motorcycle, she "did a registration check showing that this motorcycle was indeed a Harley-Davidson motorcycle." She performed the traffic stop "in the area of Schofield Avenue and Glad Street in the Village of Weston." That stop occurred about five minutes after Deputy D'Acquisto radioed for officers to keep a lookout for a Harley-Davidson motorcycle. Richey's motorcycle was "the first one [Officer Meier] saw within that five-minute time period."

¶20 Deputy Meier explained:

> I made the traffic stop due to the information in which Deputy D'Acquisto had broadcast regarding the Harley-Davidson traveling at a high rate of speed and driving erratically within the area, and due to the fact it was the only Harley-Davidson motorcycle which I had observed in the area. Also . . . as well as the time of night being 11:00 p.m. There was very light traffic at that time.

The circuit court concluded that the undisputed facts and the reasonable inferences from those facts were sufficient to

support reasonable suspicion for the traffic stop. The court of appeals affirmed.

## II.  DISCUSSION

### A.  Standard of Review

¶21  Whether undisputed facts and the reasonable inferences from those facts are sufficient to conduct an investigative stop presents a question of law for our independent review. State v. Waldner, 206 Wis. 2d 51, 54, 556 N.W.2d 681 (1996).

### B.  Reasonable Suspicion

¶22  Traffic stops are seizures. Therefore, they implicate the Fourth Amendment right to be free of unreasonable seizures. In State v. Chambers, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972), we "adopted the position of the United States Supreme Court that a police officer may in appropriate circumstances temporarily stop an individual when, at the time of the stop, he or she possesses specific and articulable facts which would warrant a reasonable belief that criminal activity was afoot." Waldner, 206 Wis. 2d at 55.

¶23  The question here is at what point does societal interest in investigating a reported law violation rise to the level of reasonably supporting an investigative stop. Guzy, 139 Wis. 2d at 676.  LaFave has identified six factors that we have concluded should be considered in assessing whether the facts and the reasonable inferences from those facts support reasonable suspicion for an investigatory stop:

> (1) [T]he particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the

3

crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

3 Wayne R. LaFave, Search and Seizure, § 9.3(d), at 461 (2d ed. 1987).

¶24 Here, Officer Meier clearly articulated that only five minutes before she saw Richey, she was asked to be on the lookout for a Harley-Davidson motorcycle that another officer had observed speeding and driving in a reckless manner. When she saw Richey, she called in the license plate on his cycle and confirmed that his bike was a Harley-Davidson. Her sighting was within the geographic area in which the speeding motorcyclist was seen. In addition, she had seen no other motorcycles in that area and it was late at night when she stopped Richey.

¶25 Furthermore, it was reasonable to infer that Richey was the driver of the Harley-Davidson another officer had reported as speeding and committing other traffic violations. Richey was present in the same area as the reported traffic violator; his presence was within five minutes of Deputy D'Acquisto's report and request that other officers be on the lookout for a Harley-Davidson motorcyclist. It was late at night and Officer Meier had seen no other motorcycles. April 28, the date of the stop, also was too early in the season for many motorcyclists to be out. It was possible that if Officer Meier did not act "immediately the opportunity for further investigation would be lost[.]" Guzy, 139 Wis. 2d at 678. "A

4

minimal amount of facts may, under these circumstances, be given greater weight than if the opportunity to act in the future is not foreclosed." Id.

¶26 It also is important to our analysis to note that there is nothing in the record that causes the inference that Richey was the driver of the Harley-Davidson motorcycle that Deputy D'Acquisto had seen speeding five minutes earlier to be an unreasonable inference. The majority opinion does not address why the brief period of time after the lookout was called and the defined location of the traffic violation that are part of the reasonable suspicion analysis, as LaFave and we required in Guzy, do not support reasonable suspicion. Id. at 677 (explaining "[w]e agree that these factors are helpful and conclude that these factors must be considered in reaching the required determination.").

¶27 The facts are not in dispute and reasonable inferences from those facts support reasonable suspicion that it was Richey who was speeding and driving his motorcycle in a reckless fashion.[1] Based on the officer's articulable facts, it was not unreasonable to stop Richey on that night. Accordingly, I would affirm the court of appeals and I dissent from the majority opinion.

III. CONCLUSION

---

[1] The majority opinion takes the extraordinary tact of recreating a map based on a poor one in the record and then testifying itself as to the map of the area that no witness testified to in court. Majority op., ¶¶5, 13.

5

¶28 Reasonable suspicion includes all factual circumstances and the reasonable inferences arising from those facts. I conclude that the record before us fully supports reasonable suspicion to stop Richey; and therefore, evidence of Richey's eighth OWI violation was admissible. There is nothing in the record that allows us to conclude Officer Meier's inference that Richey was the motorcyclist her colleague warned of was unreasonable. Because the majority opinion refuses to accept reasonable inferences from undisputed facts, it enables Richey to achieve suppression of evidence of drunk driving that was apparent after he was stopped. Accordingly, I respectfully dissent.

¶29 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice BRIAN K. HAGEDORN join this dissent.

1