COURT OF APPEALS
DECISION
DATED AND FILED

September 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP800**

Cir. Ct. No. **2020CV602**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

CITY OF WHITEWATER,

PLAINTIFF-RESPONDENT,

V.

DOUGLAS E. KOSCH,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Affirmed*.

¶1    LAZAR, J.[1]  Douglas E. Kosch appeals from a conviction entered after a jury found him guilty of operating a vehicle under the influence of an

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

intoxicant contrary to WIS. STAT. § 346.63(1)(a) and from a conviction for unreasonably refusing an alcohol test pursuant to Wisconsin's implied consent statute, WIS. STAT. § 343.305(2). Kosch argues that police lacked both reasonable suspicion for the initial traffic stop leading to his arrest and probable cause for his arrest; that Wisconsin's implied consent statute is unconstitutional; that he is entitled to a mistrial due to the City of Whitewater's improper closing arguments made in his jury trial; and that his refusal to furnish a sample for alcohol testing was not unreasonable. For the reasons that follow, this court concludes that none of Kosch's arguments warrant reversal. The convictions are affirmed.

## BACKGROUND

¶2     Police involvement with the incident underlying Kosch's convictions began with a 911 call from a motel. The sole witness at the hearing on Kosch's motion to suppress evidence was an officer with nineteen years of experience who responded to that call, Jennifer Ludlum. She testified that the caller reported "a domestic incident between a male and a female." When she and other officers got to the motel, a motel employee described the "suspect vehicle" as a dark-colored SUV, and the employee pointed the vehicle out to Ludlum.

¶3     Ludlum did not observe any traffic violations by the operator of the SUV—Kosch—as he drove through the motel parking lot and into a parking lot across the street, where she conducted a traffic stop on the vehicle. When Ludlum spoke with Kosch from the passenger side of the vehicle, however, she noticed that he had slurred speech. She asked him whether he had been drinking, and he said "nothing, like two beers." At that point, Ludlum asked Kosch to get out of the vehicle and to perform standardized field sobriety tests (SFSTs). He complied.

Ludlum testified that she observed numerous clues in Kosch's performance of the tests that suggested impairment.[2]

¶4 On cross-examination, Kosch established that Ludlum deviated from standard procedures in conducting some of the SFSTs. For example, in the HGN test, she did not hold the pen in the farthest positions to the right and left for four seconds, as is standard. However, Ludlum stated that Kosch wasn't fully cooperating with her instructions on this test and had to be reminded to follow the pen with his eyes multiple times. Ludlum made some errors in instructions for the walk-and-turn test, such as not telling Kosch to walk a *straight* line, but she indicated a straight line with her flashlight when telling him where to walk. In the one-leg stand test, Ludlum testified that she counted two clues suggesting impairment, but Kosch argued to the court that putting the foot down multiple times is counted as one clue in standardized scoring of this test and that an officer is required to observe at least two clues to draw an inference of impairment. The footage of the SFSTs, played for the trial court, also showed that Kosch told Ludlum he suffered from diabetes and that he had some issues with his back, knees, ankles, and hips. After conducting the SFSTs, Ludlum asked Kosch to take a preliminary breath test, which he declined. Ludlum "believed that he was impaired" and placed him under arrest.

---

[2] For instance, in the horizontal gaze nystagmus (HGN) test, Kosch's eyes did not smoothly follow the pen she was holding, and they showed sustained nystagmus (rapid movement) when focused on the pen in the farthest positions from center. In the walk-and-turn test, Kosch stepped off the line multiple times, failed to walk heel-to-toe for some steps, and took more steps than instructed. Finally, in the one-leg stand test, Kosch put his raised foot down three times.

¶5    The trial court denied Kosch's motion to suppress evidence, concluding that officers had reasonable suspicion for the traffic stop, probable cause for requesting a preliminary breath test, and probable cause for arrest. The court acknowledged that the testimony offered by the City "on why the officer was at the motel" was a bit unclear; there was a "domestic incident type complaint," but the testimony did not establish "who made the call, whether it was the defendant, his wife or some other third party" or any other details about what had happened. Nevertheless, in part based on its review of the officer's body camera footage, the court determined that the officers on the scene talked with a motel employee who provided information that prompted Ludlum to pursue Kosch's vehicle. So despite "some concerning aspects regarding the level of evidence that[ was] submitted regarding reasonable suspicion," the court concluded that "there was reasonable suspicion to pull Mr. Kosch over to get further information from him regarding this domestic incident which it appears he was part of based on the [m]otel employee's description and information." In denying Kosch's motion to reconsider this decision, the court further explained that "domestic" is a "term of art in the legal world"—it typically means "a crime associated with a domestic relationship[,] … usually a battery or disorderly conduct." The court elaborated, saying "that term of art when used in this context and I think context is important, does give reasonable suspicion which is a fairly low bar, for the contact that was made here to be made by the law enforcement officer and ultimately the investigation to continue."

¶6    The trial court characterized this as a "very close case" with respect to probable cause. But again, despite the deviations from standard procedures on the SFSTs (which decreased their probative value to some extent), the court determined that there were sufficient indicia of intoxication from Kosch's

4

performance on those tests to satisfy the standard of probable cause necessary to ask for a preliminary breath test, which is "lower than the amount of probable cause needed to arrest." Kosch's refusal to submit to a preliminary breath test—though within his rights—showed consciousness of guilt that, when viewed together with the other facts gathered up to that point, provided probable cause for arrest.

¶7    The trial court also denied Kosch's separate motion seeking a declaration that Wisconsin's implied consent law is unconstitutional. In so doing, the court explained that it was bound by this court's decision in *State v. Levanduski*, 2020 WI App 53, 393 Wis. 2d 674, 948 N.W.2d 411, *review denied* (WI Nov. 18, 2020) (No. 2019AP1144-CR). The court said it was required by precedent to reject Kosch's argument that the use of a defendant's refusal to submit to an alcohol test against him in court violates the Fourth and Fifth Amendments.

¶8    At trial on Kosch's OWI charge, the jury heard extensive testimony about what occurred in the course of the traffic stop, including testimony from Ludlum about Kosch's performance on the SFSTs and a robust cross-examination establishing the deviations from standard procedures in conducting those tests. In the City's rebuttal to the defense's closing argument, counsel argued:

> The defense is suggesting that you should find the defendant not guilty, but you have to look at what that entails. OWIs are a huge problem in our state and our country, causing injuries and deaths every single year. Officer Ludlum did a fantastic job investigating this situation and ultimately placing the defendant, Douglas Kosch, under arrest for operating while under the influence. Enforcement of operating under the influence is not complete until those who violate those laws are found guilty. Therefore, I'm asking you—I'm asking that you complete that process and find the defendant, Douglas Kosch, guilty of operating under the influence.

¶9     Kosch requested a sidebar and objected to this argument.[3]  The trial court then provided a curative instruction before reading the jury instructions for the case:

> I'm simply going to preface my remarks by simply saying that these jury instructions are important and obviously the laws in our state are important.  It's important that you consider this case only based on the laws that exist in our state and not based on any emotion.  Regardless of whether we do or do not have an OWI problem or—in this state or in this county, that's not something you should or can consider in determining the guilt or innocence of the defendant here today.  You're to look solely at the facts of this case and ultimately make findings regarding what you believe the facts are, apply the law that I'm going to give you to those facts in these instructions and then base your verdict solely on the facts and the law as you find—the law as I give to you.

¶10     In reading its remaining standard jury instructions, the trial court also reminded the jury that "[r]emarks of the attorneys are not evidence" and that it should "[c]onsider carefully the closing arguments of the attorneys" but that "their arguments and conclusions and opinions are not evidence."  The court rejected Kosch's motion for a mistrial based on the City's closing argument, which Kosch argued improperly commented on allegedly "inflammatory" matters not in evidence (like the fact that OWIs are a major problem in this country) and asked jurors, in essence, to "step into the shoes of the cop" and "do justice for the unspoken victims."  The court determined that its curative instructions were sufficient to mitigate any prejudice caused by the "somewhat problematic" closing.

---

[3] The sidebar was not contemporaneously recorded by the court reporter, as is the best practice, but the trial court and counsel did place their positions, arguments, and ruling on the record after the curative instruction and other instructions were given and the jury left to begin its deliberations.

¶11    The jury found Kosch guilty of operating a motor vehicle while under the influence of an intoxicant.  Kosch requested a hearing before the trial court on the issue of whether his refusal to submit to a breath test for alcohol was unreasonable, which was held while the jury was on a break during Kosch's trial.  The court determined that Kosch's response to Ludlum's request for a breath test—"no, no, not without a lawyer"—constituted a legal refusal that was unreasonable based on its conclusions that there was reasonable suspicion for the stop and probable cause for the request and arrest and its finding that Ludlum "clearly read the [Informing the Accused] form to the defendant."  Kosch appeals on multiple issues.

## DISCUSSION

¶12    Kosch renews arguments made to the trial court regarding reasonable suspicion for the initial stop and probable cause to request a preliminary breath test and for arrest; constitutionality of this state's implied consent statute; prejudice due to the City's closing argument; and the reasonableness of his refusal to submit to a breath test for alcohol.  This court will address each argument in turn.

### I.  Reasonable Suspicion/Probable Cause

¶13    Kosch's first argument on appeal is that the trial court erred by not granting his motion to suppress and motion to reconsider on the grounds that the initial traffic stop, request for a preliminary breath test, and arrest all violated his Fourth Amendment right to be free from unreasonable search and seizure.  *See Davis v. United States*, 564 U.S. 229, 236 (2011) ("The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'") (quoting U.S. CONST.

amend. IV). The question of whether a seizure is reasonable presents an issue of constitutional fact, which requires this court to give "deference to the [trial] court's findings of evidentiary fact, and … review[] independently the [trial] court's application of those facts to constitutional standards." *See* *State v. Malone*, 2004 WI 108, ¶14, 274 Wis. 2d 540, 683 N.W.2d 1.

¶14 Ludlum's initial investigatory stop of Kosch must be analyzed first. There is no question that this stop was a "seizure" subject to Fourth Amendment protections. *See* *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Rutzinski*, 2001 WI 22, ¶14, 241 Wis. 2d 729, 623 N.W.2d 516. To justify such a stop, an officer must have (at minimum) a reasonable suspicion that the driver has committed an offense.[4] *United States v. Hensley*, 469 U.S. 221, 226 (1985); *Rutzinski*, 241 Wis. 2d 729, ¶14. This is a "common sense test" and looks to "[w]hat … a reasonable police officer [would] reasonably suspect in light of his or her training and experience." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). This means "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, objectively warrant a reasonable person with the knowledge and experience of the officer to believe that criminal activity is afoot." *Rutzinski*, 241 Wis. 2d 729, ¶14 (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). Courts are to "assess reasonable

---

[4] The City argues for the first time on appeal that Ludlum was justified in stopping Kosch because she was performing her role as a community caretaker. Even assuming this argument was not waived per *State v. Reese*, 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396 (stating that a "court need not address arguments that are raised for the first time on appeal"), this court rejects that argument because the City has not met its burden to show any objectively reasonable basis for Ludlum to believe that Kosch was in need of assistance. *See* *State v. Kramer*, 2009 WI 14, ¶¶30, 36, 315 Wis. 2d 414, 759 N.W.2d 598 (officer must have an objectively reasonable basis for a community caretaker function as distinguished from detection, investigation or acquisition of evidence).

suspicion in light of the totality of the circumstances." *State v. Richey*, 2022 WI 106, ¶9, 405 Wis. 2d 132, 983 N.W.2d 617.

¶15 "Reasonable suspicion is 'a low bar[.]'" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (alteration in original; citation omitted). It requires less certainty than probable cause. *State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. But, it must be based on more than an officer's "inchoate and unparticularized suspicion or 'hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting *Terry*, 392 U.S. at 27).

¶16 The articulated facts here include only a 911 call from a motel regarding a "domestic incident between a male and a female," a motel employee's pointing out of a particular dark SUV, and the fact that that vehicle was leaving the scene. This court also accepts the trial court's factual finding that "the officers were speaking in the lobby with an employee of the motel … in the course of executing [their] investigation" because it is not clearly erroneous. Given the "low bar" of reasonable suspicion, *e.g.*, *State v. Genous*, 2021 WI 50, ¶8, 397 Wis. 2d 293, 961 N.W.2d 41, this court reaches the same conclusion as the trial court, despite sharing that court's concerns about the sparseness of facts elicited at the suppression hearing.

¶17 A reasonable officer in Ludlum's position could rationally infer from the articulated facts that a crime had been committed at the motel; "domestic incident" is indeed a term of art in the law that strongly suggests domestic abuse, a crime that requires arrest in certain circumstances, *see* WIS. STAT. § 968.075(2), especially when the report of the "domestic incident" was made in a 911 call. Such an emergency call implies that the caller believed someone to be in danger of imminent bodily harm, which implicates the crime of battery. *See* WIS. STAT.

9

§ 940.19.[5]  It is also reasonable to infer from these facts that the motel employee pointed out Kosch's particular vehicle because the employee believed the driver was involved in the incident and was attempting to leave the scene because he had committed some offense.  The totality of the circumstances, although they do not paint a complete picture of what was known about Kosch's involvement and what specific crime might have been committed, are sufficient to support a reasonable suspicion that Kosch had committed an offense.  Thus, this court concludes the initial stop did not violate Kosch's Fourth Amendment rights.

¶18    This court now moves on to the next event.  Kosch does not challenge Ludlum's lawful extension of the stop to investigate whether he was impaired after she observed his slurred speech and he admitted that he had consumed some alcohol that day.  He does argue, however, that Ludlum lacked probable cause to request a preliminary breath test after she conducted SFSTs.  An officer may request a person to take a preliminary breath test if the officer has probable cause to believe that the person has committed an impaired driving offense.  WIS. STAT. § 343.303.  This standard is greater than that required for an investigative stop but less than that required for arrest.  *County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999).

¶19    Here, Ludlum requested a preliminary breath test after observing Kosch's slurred speech, hearing Kosch's admission that he had consumed alcohol that day, and after seeing Kosch perform SFSTs in which he could not smoothly follow the pen being moved horizontally by Ludlum (and was unable to follow her

___

[5] The City also argues, aptly, that law enforcement could reasonably have believed that Kosch had disturbed the peace or was involved in disorderly conduct—both or either of which could be violations of municipal code ordinances or even state statutes.

instructions for other parts of that test), failed to step heel-to-toe in a straight line as instructed, and was unable to balance on one leg for more than a few seconds. Although Kosch argues that "the trial court should not have given any evidentiary weight to the field sobriety test results" due to these potential imperfections, this court is mindful that SFSTs need not be performed according to strict protocols in order to yield probative or "valid" results; "[t]hey are observational tools, not litmus tests that scientifically correlate certain types or numbers of 'clues' to various blood alcohol concentrations." *City of West Bend v. Wilkens*, 2005 WI App 36, ¶17, 278 Wis. 2d 643, 693 N.W.2d 324.

¶20    The trial court appropriately discounted the value of those tests it found to be less relevant based on Kosch's cross-examination of Ludlum; for one example, it explicitly "put lower weight" on some of the clues Ludlum reported in the HGN test because "[t]he stimulus was not held at maximum deviation for the requisite amount of time."  And the court considered that "Kosch may have had some physical impairments that affected his ability to appropriately complete the tests," namely his diabetes and back/leg issues.  But the court took "at face value" Ludlum's testimony that she had observed Kosch enough "based on her training and experience" of nineteen years in law enforcement to determine that "he would be physically able to complete the tests or at least … have a fair opportunity to complete them." *See State v. Wille*, 185 Wis. 2d 673, 682, 518 N.W.2d 325 (Ct. App. 1994) ("The trial court takes evidence in support of suppression and against it, and chooses between conflicting versions of the facts.  It necessarily determines the credibility of the officers and other witnesses.")

¶21    The trial court obviously rejected the implication that Ludlum's deviations from standard procedures or Kosch's medical condition affected his ability to perform the tests whatsoever and found that other clues from the SFSTs

(including lack of eyes smoothly following stimulus, an inability to keep heel-to-toe formation and to walk in a straight line, and an inability to balance on one leg)—in addition to the fact that Kosch sometimes displayed an inability to follow the directions which itself "can be looked at as a concern regarding whether he's impaired"—were indicia of intoxication. This factual finding is not clearly erroneous. *See Malone*, 274 Wis. 2d 540, ¶14. Accepting the trial court's factual findings regarding the SFSTs, this court agrees that, together with the slurred speech and admission to drinking, they provide probable cause to believe Kosch was operating while impaired and thus that the standard for requesting a preliminary breath test was met in this case.

¶22　Finally, Kosch argues that the totality of the circumstances did not give rise to probable cause for his arrest. As mentioned, this standard is higher than that needed to request a preliminary breath test; an officer has probable cause to arrest when she has "that quantum of evidence within [her] knowledge … that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551. The question of probable cause must be assessed by "looking at the totality of the circumstances." *Id.*, ¶20. Kosch's argument is based on the premise that the results of the SFSTs conducted by Ludlum were entitled to no evidentiary weight and that the trial court could not legally consider his refusal to take a preliminary breath test as evidence of consciousness of guilt. Kosch is wrong on both of these premises.

¶23　First, as stated above, SFSTs are relevant to a court's analysis and, in this case, along with Kosch's slurred speech and admission of drinking, provided significant indicia of impairment. As stated in *Wilkens*, "when an officer-particularly one with [nineteen] years of law enforcement experience …

determines that a driver fails not one but *three* FSTs, it is more probable that the person has an illegal blood alcohol concentration than if the officer determined he or she passed the tests," and this court "cannot conclude that the trial court erred in considering the evidence." 278 Wis. 2d 643, ¶14 (discussing observations of an officer with sixteen years of law enforcement experience).

¶24 Second, none of the cases cited by Kosch say that a refusal to take a preliminary breath test cannot be used against the refuser in court.[6] To the contrary, refusal to submit to a preliminary breath test is a fact that may be considered evidence of consciousness of guilt for the purpose of establishing probable cause to arrest. *See **State v. Babbitt***, 188 Wis. 2d 349, 359, 525 N.W.2d 102 (Ct. App. 1994) (holding this with respect to a refusal to submit to SFSTs). This court agrees with the trial court that under the totality of the circumstances, Ludlum had probable cause to arrest Kosch for operating a vehicle while under the influence of an intoxicant.

## II. Constitutionality of Implied Consent Statute

¶25 Kosch next seeks dismissal of his refusal proceedings, arguing that Wisconsin's implied consent statute is unconstitutional because it "prospectively

---

[6] Kosch cites cases that do not deal with refusals in the context of submitting to requests for chemical tests supported by probable cause but rather concern cooperation with police where there is no reasonable suspicion or probable cause to support a search or seizure. *See **Florida v. Bostick***, 501 U.S. 429, 433-37 (1991) (noting that there was no reasonable suspicion, reiterating that a consensual encounter does not trigger Fourth Amendment scrutiny, and holding that the appropriate test for whether a seizure occurs on a bus is whether a reasonable person would feel free to decline the officers' requests); ***INS v. Delgado***, 466 U.S. 210, 216-21 (1984) (holding that surveys in which workers were asked about citizenship but were free to continue working or to move around factory did not constitute seizures); ***Florida v. Royer***, 460 U.S. 491, 507 (1983) (detention of individual is a seizure that must be supported by probable cause); ***State v. Griffith***, 2000 WI 72, ¶52, 236 Wis. 2d 48, 613 N.W.2d 72 (questioning of a passenger in a car was reasonable).

threatens to punish people for exercising their Fourth Amendment right to refuse to provide voluntary consent[] and their Fifth Amendment right to remain silent without penalty in criminal cases." Challenges to the constitutionality of a statute are reviewed de novo. *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. Statutes are presumed to be constitutional, and the party challenging a statute must prove its unconstitutionality beyond a reasonable doubt. *Id.*, ¶15. To succeed on a facial challenge, a party must prove that the law cannot be enforced "under any circumstances." *Id.*, ¶13 (citation omitted). To successfully challenge a statute as applied to a particular litigant, by contrast, the litigant must show that his constitutional rights were actually violated. *Id.* Kosch raises both types of challenges.

¶26 Every state has some version of an implied consent law that requires motorists, as a condition of driving in the state, to consent to blood alcohol content testing if they are suspected of impaired driving. *Missouri v. McNeely*, 569 U.S. 141, 161 (2013). Wisconsin's statute provides:

> At the time that a chemical test specimen is requested … the law enforcement officer shall read the following to the person from whom the test specimen is requested:

> "You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both ….

> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. *If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.*"

WIS. STAT. § 343.305(4) (emphasis added).

¶27    Kosch acknowledged before the trial court that "the big barrier here" in terms of his constitutional challenge is *Levanduski*.  In that case, Levanduski challenged the language emphasized above, which was read to her before she consented to a blood alcohol test,[7] as an incorrect statement of the law. *Levanduski*, 393 Wis. 2d 674, ¶3.  She asserted that her refusal could not constitutionally be used against her in court and thus that her consent (made with alleged misinformation) was involuntary.  *Id.*  The *Levanduski* court addressed the identical argument that Kosch makes: that there is a "constitutional right to refuse to submit to [alcohol testing]" and that a defendant's right to refuse testing is violated if the refusal is used against the defendant.  *See id.  Levanduski* is not simply a "big barrier," it is insurmountable precedent and directly on point.

¶28    Kosch asserts, as Levanduski unsuccessfully did, that the relatively recent decisions from the United States Supreme Court and our state supreme court, especially *Missouri v. McNeely*, *Birchfield v. North Dakota*, 579 U.S. 438 (2016), and *State v. Dalton*, 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120,

---

[7] Although a blood draw was at issue in *State v. Levanduski*, 2020 WI App 53, ¶1, 393 Wis. 2d 674, 948 N.W.2d 411, *review denied* (WI Nov. 18, 2020) (No. 2019AP1144-CR), and a preliminary breath test was requested of Kosch, these two types of alcohol tests are treated the same in WIS. STAT. § 343.305(4), and both are "searches" for the purposes of the Fourth Amendment, *see Birchfield v. North Dakota*, 579 U.S. 438, 454-55 (2016).

reflected a change in constitutional law.[8]  This change, according to both Kosch and Levanduski, means that the 1983 case of *South Dakota v. Neville*, 459 U.S. 553, 560 (1983)—which held that "a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test"—is no longer controlling and that the refusal of a person suspected of driving under the influence cannot constitutionally be used against the person in court.  *See Levanduski*, 393 Wis. 2d 674, ¶¶7, 10-11.

¶29    The *Levanduski* court held, however, that while a "State may not make a drunk-driving suspect's refusal a crime itself, [it] may impose civil penalties and 'evidentiary consequences' on such refusals."  *Id.*, ¶12 (citation omitted).  Our supreme court declined to review that decision.  We are bound to

---

[8] The *Levanduski* court discussed each of these cases as follows.  *Missouri v. McNeely*, 569 U.S. 141, 160-61 (2013), a Fourth Amendment case about warrantless nonconsensual blood draws, "recognized as an acceptable 'legal tool[]' using the fact of a defendant's refusal against the defendant 'in a subsequent criminal prosecution.'"  *Levanduski*, 393 Wis. 2d 674, ¶11 (alteration in original; quoting *McNeely*, 569 U.S. at 160-61).  *Birchfield*, discussing implied consent laws in the Fourth Amendment context, held "that a refusal to submit to a blood test cannot be the basis for a separate criminal charge" but "reiterated the lawfulness of implied-consent laws that impose 'civil penalties and evidentiary consequences' on motorists who refuse to submit to a [test]."  *Levanduski*, 393 Wis. 2d 674, ¶12 (quoting *Birchfield*, 579 U.S. at 476-77).  Finally, in *State v. Dalton*, 2018 WI 85, ¶¶58-60, 383 Wis. 2d 147, 914 N.W.2d 120, our supreme court held that it was unlawful to sentence a person convicted of operating while intoxicated to a longer jail term solely based on his refusal to submit to alcohol testing but also "acknowledged that imposing 'civil penalties and evidentiary consequences' on drunk-driving suspects who refuse to submit to a blood draw is lawful under the Fourth Amendment."  *Levanduski*, 393 Wis. 2d 674, ¶13 (quoting *Dalton*, 383 Wis. 2d 147, ¶58).

follow ***Levanduski*** and reject Kosch's constitutional challenge on that basis.[9]  *See* ***Cook v. Cook***, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("[P]ublished opinions of the court of appeals are precedential.").  Under our precedent, this court cannot conclude that Wisconsin's implied consent law is unconstitutional on its face because its imposition of the civil penalty of license revocation and the evidentiary consequence of using of the refusal against a defendant in court violates neither the Fourth nor the Fifth Amendments.  *See* ***Levanduski***, 393 Wis. 2d 674, ¶15.  This court cannot conclude that the statute is unconstitutional as applied to Kosch for the same reason.

### III.  Closing Argument by the City

¶30     Kosch also argues that the trial court erred in denying his motion for a mistrial based on the City's closing arguments.  He contends the arguments were improper because the City commented on matters not in evidence, such as the alleged fact that "OWIs are a huge problem in our state and our country, causing injuries and deaths every single year," and because it asked the jury to "complete [the] process" started by Ludlum to "find the defendant, Douglas Kosch, guilty."  He also asserts that the curative instructions supplied by the trial court were insufficient to cure the prejudice to him from these improper arguments.

---

[9] Kosch asserts that "no Wisconsin court has addressed whether the rule announced by the U.S. Supreme Court in ***Griffin v. California***[, 380 U.S. 609 (1965)] has been rendered applicable to the implied consent statute as a result of recent U.S. Supreme Court decisions on impaired driving cases."  ***Griffin*** is a 1965 case that held a prosecutor's comment on a defendant's refusal to testify in a criminal trial violated his Fifth Amendment right.  ***Id.*** at 615.  Since then, the United States Supreme Court has addressed implied consent in the 2013 ***McNeely*** opinion and the 2016 ***Birchfield*** opinion.  Kosch cites no case postdating the 2020 opinion in ***Levanduski*** as changing the legal landscape.  His argument that ***Levanduski*** interpreted United States Supreme Court cases incorrectly or failed to consider ***Griffin*** is one for the Wisconsin Supreme Court, not this court.

¶31 Decisions on objections to closing arguments are within the trial court's discretion, and this court affirms the court's ruling "unless there has been a misuse of discretion which is likely to have affected the jury's verdict." ***State v. Neuser***, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995). The prosecutor's arguments are to be viewed "in the context of the entire trial." ***Id.*** A trial court's decision to order a mistrial is also discretionary. ***State v. Seefeldt***, 2003 WI 47, ¶13, 261 Wis. 2d 383, 661 N.W.2d 822. The trial court's ruling on "a motion for mistrial on the grounds of improper prosecutorial conduct …will not be reversed by this court unless there is evidence of abuse of discretion and prejudice to the defendant." ***State v. Camacho***, 176 Wis. 2d 860, 886, 501 N.W.2d 380 (1993) (citation omitted), *modified on other grounds by* ***State v. Head***, 2002 WI 99, ¶104, 255 Wis. 2d 194, 648 N.W.2d 413; *see also* ***State v. Adams***, 223 Wis. 2d 60, 83, 588 N.W.2d 336 (Ct. App. 1998) (holding that appellate courts reverse denials of mistrials only if there is a "clear showing" that there was an erroneous exercise of discretion[10]). Not all errors "warrant a mistrial and 'the law prefers less drastic alternatives, if available and practical.'" ***State v. Givens***, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998) (citation omitted).

¶32 Our supreme court set forth the relevant standard in ***State v. Hurley***, 2015 WI 35, ¶96, 361 Wis. 2d 529, 861 N.W.2d 174:

> "When a defendant alleges that a prosecutor's statements constituted misconduct, the test we apply is whether the statements so infected the trial with unfairness as to make the resulting conviction a denial of due process." [***State v. Davidson***, 2000 WI 91, ¶88, 236 Wis. 2d 537, 613 N.W.2d 606.] "Even if there are

---

[10] Since 1992, Wisconsin cases "use the phrase 'erroneous exercise of discretion' in place of the phrase 'abuse of discretion,'" but the phrases have equivalent meaning. ***Seifert v. Balink***, 2017 WI 2, ¶93 n.50, 372 Wis. 2d 525, 888 N.W.2d 816.

> improper statements by a prosecutor, the statements alone will not be cause to overturn a conviction. Rather, the statements must be looked at in context of the entire trial." [*State v. Mayo*, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115]; *see also **United States v. Young***, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

*Id.* (third alteration in original).

¶33 "Attorneys are accorded 'considerable latitude in closing arguments.'" ***State v. Mader***, 2023 WI App 35, ¶62, 408 Wis. 2d 632, 993 N.W.2d 761 (citing ***State v. Burns***, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166); ***State v. Nielsen***, 2001 WI App 192, ¶46, 247 Wis. 2d 466, 634 N.W.2d 325. This court questions whether the City's closing arguments related to the seriousness of impaired driving crossed "[t]he line between permissible and impermissible argument" by "suggest[ing] that the jury should arrive at a verdict by considering factors other than the evidence." *See **Neuser***, 191 Wis. 2d at 136. Instead, the comments at issue relate to "matters of common knowledge, observations and experience in the affairs of life," ***State v. Powell***, 2012 WI App 33, ¶14, 340 Wis. 2d 423, 812 N.W.2d 520, and could be viewed as an appeal to the jury to take seriously its role in evaluating the evidence in this impaired driving case. *See **State v. Draize***, 88 Wis. 2d 445, 450, 276 N.W.2d 784 (1979) (affirming as proper prosecutor's closing argument that jury should speak to the defendant through its verdict by "telling him, look, this is not the kind of driving you engage in"). Indeed, the United States Supreme Court has commented on the "tragic frequency" of impaired driving and the terrible "carnage caused by drunk drivers" in this country, ***Neville***, 459 U.S. at 558, and our state supreme court has characterized drunk driving as "a scourge on society," ***State v. Nordness***, 128

19

Wis. 2d 15, 33, 381 N.W.2d 300 (1986). Nor do the comments of completing the job started by law enforcement seem particularly problematic; it is routine for prosecutors to ask the jury to convict a defendant.

¶34 Regardless, the trial court sustained Kosch's objection and issued a curative instruction, asking the jury to ignore "whether we do or do not have an OWI problem … in this state or in this county" because "that's not something you should or can consider in determining the guilt or innocence of the defendant here today." The court also told the jury that attorney argument was not to be considered as evidence. As Kosch acknowledges, curative instructions are presumed to be sufficient to ameliorate prejudice. *See* ***State v. Gary M.B.***, 2004 WI 33, ¶33, 270 Wis. 2d 62, 676 N.W.2d 475. This was the basis for denying Kosch's motion for mistrial, and this court cannot conclude that decision was an erroneous exercise of discretion or that it resulted in prejudice to the defendant. *See* ***Camacho***, 176 Wis. 2d at 886. The City's evidence of guilt independent of its statements in closing argument include Kosch's slurred speech, admission of drinking, poor performance on SFSTs, refusal to submit to a breath test for alcohol, and Ludlum's opinion that Kosch was impaired. *See* ***State v. Spring***, 48 Wis. 2d 333, 339-40, 179 N.W.2d 841 (1970) (finding no prejudice where improper remarks to jury were clearly outweighed by strength of the State's evidence). Accordingly, this issue, too, lacks merit on appeal.

## IV. Reasonableness of Refusal to Submit to Test for Intoxicants

¶35 Finally, Kosch argues that the trial court erred in concluding that his refusal to provide a sample for a preliminary breath test was unreasonable, the consequence of which was revocation of his driver's license, among other things. "Application of the implied consent statute to an undisputed set of facts is a

question of law" as are "considerations of due process and equal protection with the requirements of the implied consent statute," all of which we review independently. *State v. Baratka*, 2002 WI App 288, ¶7, 258 Wis. 2d 342, 654 N.W.2d 875. "To the extent the [trial] court's decision involves findings of evidentiary or historical facts, those findings will not be overturned unless they are clearly erroneous." *Id.*

¶36 This court has already discussed and rejected Kosch's assertion that Ludlum's request for a preliminary breath test was unlawful, which resolves his argument about his refusal on the same reasonable suspicion/probable cause grounds in the City's favor. *See State v. Anagnos*, 2012 WI 64, ¶4, 341 Wis. 2d 576, 815 N.W.2d 675 (holding that an unlawful traffic stop or arrest without probable cause is a defense to revocation under implied consent statute). This leaves only his argument that his statement that he would not consent to the test "without a lawyer" did not constitute a legal refusal because, under *Baratka*, "[r]epeated requests for an attorney can amount to a refusal as long as the officer informs the driver that there is no right to an attorney at that point," and Ludlum did not inform Kosch that he did not have a right to a lawyer. *See Baratka*, 258 Wis. 2d 342, ¶15.

¶37 The trial court found, as a matter of historical fact, that Kosch's response to Ludlum's request for a breath test, reflected in the transcript (in the form of a question from Kosch's counsel to Ludlum) as "no, no, not without a lawyer," was actually "a no, period. And then another sentence where [Kosch] talks about his request for an attorney." The trial court had the benefit of viewing the video of the interaction and observing the questioning of Ludlum (and her response) in real time. This court cannot conclude that the trial court's finding is clearly erroneous; so affirmance is warranted on that basis alone.

¶38 Moreover, the officer in ***Baratka*** did advise the defendant in that case (correctly) that he had no right to an attorney when he was asked to submit to alcohol testing. 258 Wis. 2d 342, ¶15. Thus, the legal implication of a refusal based on a defendant's request for an attorney without such advisement was not before the trial court. By contrast, in ***State v. Reitter***, 227 Wis. 2d 213, 218, 595 N.W.2d 646 (1999), our supreme court addressed whether an officer is required to advise a defendant about the lack of a right to counsel in the administration of a test under Wisconsin's implied consent law and held that "no due process violation occurs when an officer does not inform a defendant that the right to counsel does not attach to the stages preceding administration of a chemical test." ***Id.*** The supreme court further stated that "where a defendant exhibits no confusion, the officer is under no affirmative duty to advise the defendant that the right to counsel does not attach to the implied consent statute." ***Id.*** at 231. Thus, this court rejects Kosch's remaining arguments under ***Baratka***.

## CONCLUSION

¶39 In summary, this court concludes that the officer's initial stop, request for a preliminary breath test, and arrest of Kosch did not violate the Fourth Amendment's prohibition on unreasonable searches and seizures; that, based upon controlling precedent, Wisconsin's implied consent statute is constitutional; that Kosch was not entitled to a mistrial due to the City's closing arguments; and that Kosch unreasonably refused to furnish a sample for alcohol testing. Accordingly, Kosch's convictions are affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.