**2020 WI App 53**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP1144-CR

† Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

> **PLAINTIFF-APPELLANT,**

> **V.**

**DAWN J. LEVANDUSKI,**

> **DEFENDANT-RESPONDENT.†**

| | |
|---|---|
| Opinion Filed: | July 1, 2020 |
| Submitted on Briefs: | June 11, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeffrey A. Sisley*, assistant district attorney. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *John T. Bayer* of *Law Offices of John T. Bayer,* Milwaukee. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1144-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CT238

IN COURT OF APPEALS

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

DAWN J. LEVANDUSKI,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Ozaukee County: TIMOTHY M. VAN AKKEREN, Judge. *Reversed and cause remanded for further proceedings.*

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1 GUNDRUM, J.[1] The State appeals from an order of the circuit court suppressing evidence from a blood draw of Dawn Levanduski following her arrest for operating a motor vehicle while intoxicated (OWI), second offense. The court granted Levanduski's suppression motion on the basis that her consent to the draw was not voluntary because the arresting officer, as part of reading the Informing the Accused form to her, informed her that if she refused to submit to the blood draw, "the fact that [she] refused testing can be used against [her] in court," which information the court concluded and Levanduski insists was a misrepresentation of the law. Because we conclude that the Informing the Accused form, and hence the officer, did not misrepresent the law to Levanduski, we also conclude that her consent to the blood draw was voluntary.[2] With that, we determine that the court erred in granting her suppression motion, and we reverse and remand for further proceedings.

### *Background*

¶2 After observing significant indicia of intoxication, an officer arrested motorist Levanduski for OWI, second offense. Following the officer reading her the Informing the Accused form, Levanduski consented to the drawing of her blood. Part of that form states: "If you refuse to take any test that this agency requests, your operating privileges will be revoked and you will be subject to other penalties. The test results or *the fact that you refused testing can be used against you in court*." WIS. STAT. § 343.305(4) (emphasis added). An analysis of Levanduski's blood sample indicated a .269 blood alcohol concentration (BAC). She was charged with

---

[1] This appeal was converted from a one-judge appeal to a three-judge appeal under WIS. STAT. RULE 809.41(3) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Levanduski identifies no other basis for claiming her consent was involuntary.

OWI and operating with a prohibited alcohol concentration, both as a second offense.

¶3 Levanduski moved to suppress the blood test results. She claimed her consent to the blood draw was involuntary because she had a constitutional right to refuse to submit to a blood draw and the officer violated that right by misinforming her that if she refused to submit to it, the fact that she refused could be used against her in court. The circuit court agreed and granted Levanduski's motion. The State appeals.

## *Discussion*

¶4 In reviewing a circuit court's order granting or denying a suppression motion, "[w]e will uphold the court's factual findings unless they are clearly erroneous, but we independently apply constitutional principles to those facts." *State v. Coffee*, 2019 WI App 25, ¶6, 387 Wis. 2d 673, 929 N.W.2d 245.

¶5 WISCONSIN STAT. § 343.305, Wisconsin's implied consent law, provides in relevant part:

> (2) IMPLIED CONSENT. Any person who ... drives or operates a motor vehicle upon the public highways of this state ... is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol [or drugs], or any combination of [these substances], when requested to do so by a law enforcement officer under sub. (3)(a) …. Any such tests shall be administered upon the request of a law enforcement officer….

> (3) … (a) Upon arrest of a person for a violation of [WIS. STAT. §] 346.63(1) … a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub.(2)….

….

(4) INFORMATION. At the time that a chemical test specimen is requested under sub. (3)(a) …, the law enforcement officer shall read the following to the person from whom the test specimen is requested:

"You have … been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both …

This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. *If you refuse to take any test that this agency requests*, your operating privilege will be revoked and you will be subject to other penalties. The test results or *the fact that you refused testing can be used against you in court.*

…."

(Emphasis added.)

¶6      Similar to her argument before the circuit court, Levanduski argues on appeal that under the state of the law at the time of her arrest, she had a Fourth Amendment constitutional right to refuse to submit to a blood draw. Because of this, she insists, when the officer, pursuant to WIS. STAT. § 343.305(4), read to her the Informing-the-Accused language stating that if she refused to submit to the requested test, "the fact that [she] refused testing [could] be used against [her] in court," the officer misrepresented the law. And because the officer misrepresented the law, she continues, her consent to the blood draw was coerced and not voluntary. The law does not support Levanduski's position.

¶7      In *South Dakota v. Neville*, 459 U.S. 553, 555 (1983), Neville refused to submit to a blood draw after police warned him he could lose his driver's license if he refused. When Neville's Fifth Amendment case came before the Supreme Court, the Court noted that South Dakota's implied-consent law was designed to

4

discourage refusals by providing for the revocation of the driver's license as well as "allowing the refusal to be used against the defendant at trial." *Id.* at 559-60. The Court held "that the admission into evidence of a defendant's refusal to submit to [a blood-alcohol] test … does not offend the right against self-incrimination." *Id.* at 554. Contrasting the use at trial of a defendant's refusal to take the witness stand with the use of a defendant's refusal to submit to a blood draw, the Court expressed that "a prosecutor's or trial court's comments on a defendant's refusal to take the witness stand impermissibly burdened the defendant's Fifth Amendment right to refuse," but in the case of a refusal to submit to a blood draw "a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test." *Id.* at 560 n.10.

¶8　　Neville also challenged the use of his refusal on due process grounds because although the law enforcement officer had warned him pre-refusal that his driver's license could be revoked if he refused to submit to the blood test, the officer did not specifically warn him that the fact of his refusal could be used as evidence against him in court. *Id.* at 555, 564. The Court contrasted using the fact of a defendant's refusal with using as impeachment evidence the defendant's silence following *Miranda*[3] warnings. *Id.* at 565. The *Neville* Court stated that unlike using a defendant's silence against him,

> we do not think it fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial. First, the right to silence underlying the *Miranda* warnings is one of constitutional dimension, and thus cannot be unduly burdened. [Neville's] right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the South Dakota legislature.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Id.* (citation omitted). The Court found no due process violation and noted that it was a lawful "consequence" that evidence of Neville's refusal could be used against him "in court" and "at trial." *Id.* at 565-66.

¶9 Two years after *Neville*, in *State v. Bolstad*, 124 Wis. 2d 576, 585, 370 N.W.2d 257 (1985), our supreme court expressed that "[t]he state may submit [at trial] the … admissible evidence that Bolstad refused" to permit a blood draw to "test for blood alcohol content." Then, in *State v. Zielke*, 137 Wis. 2d 39, 50-51, 403 N.W.2d 427 (1987), another blood-draw case, the court indicated that if law enforcement appropriately advises an OWI suspect by reading the Informing-the-Accused information to the suspect, the State may "obtain the benefit of using refusal evidence in the criminal prosecution for the substantive offense involving intoxicated use of a vehicle." Referring to an earlier decision in *State v. Crandall*, 133 Wis. 2d 251, 394 N.W.2d 905 (1986), the *Zielke* court summarized the *Crandall* court's holding as "[o]nce appropriately advised[,] there was no constitutional impediment to using the fact of refusal in the subsequent prosecution for operating while intoxicated." *Zielke*, 137 Wis. 2d at 50. Drawing from *Bolstad* and a decision of this court in *State v. Albright*, 98 Wis. 2d 663, 298 N.W.2d 196 (Ct. App. 1980), the *Zielke* court summarized the state of the law on this point at that time: "[T]he fact of the defendant's refusal to submit to a test may be introduced at trial on the substantive drunk driving offense as a means of showing consciousness of guilt." *Zielke*, 137 Wis. 2d at 49-50.

¶10 Despite the clear rule that an OWI suspect's refusal to submit to a blood draw can be used against the suspect as evidence in court, Levanduski insists this rule has been abrogated by recent decisions of the United States Supreme Court and Wisconsin Supreme Court. She is incorrect; in fact, the rule has been reinforced.

6

¶11   While Levanduski relies most heavily upon ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016), and ***State v. Dalton***, 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120, we first briefly set the stage with ***Missouri v. McNeely***, 569 U.S. 141 (2013).  In discussing the application of a totality-of-the-circumstances analysis for determining whether, in the Fourth Amendment context, exigent circumstances justified a warrantless search, the ***McNeely*** Court cited to ***Neville*** and observed:

> States *have* a broad range of *legal tools* to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws.  For example, all 50 States have adopted *implied consent laws* that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are … detained on suspicion of a drunk-driving offense.  Such laws impose significant *consequences* when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and *most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution*.

***McNeely***, 569 U.S. at 160-61 (emphasis added; citations omitted).  Thus, the ***McNeely*** Court recognized as an acceptable "legal tool[]" using the fact of a defendant's refusal against the defendant "in a subsequent criminal prosecution." ***Id.***

¶12   Discussing implied consent laws, also in the Fourth Amendment context, the Court held three years later that a refusal to submit to a blood test cannot be the basis for a separate criminal charge, stating that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." ***Birchfield***, 136 S. Ct. at 2186.  However, the Court, specifically citing ***McNeely*** and ***Neville***, further stated:

> Our prior opinions have referred *approvingly* to the general concept of implied-consent laws that impose civil penalties *and evidentiary consequences* on motorists who refuse to comply.  *See*, *e.g.*, ***McNeely***, [569 U.S. at 160-61] (plurality

7

> opinion); *Neville*, [459 U.S. at 560]. Petitioners do not question the constitutionality of those laws, and *nothing we say here should be read to cast doubt on them.*
>
> It is *another matter*, however, for a State not only to insist upon an intrusive blood test, but also to impose *criminal penalties* on the refusal to submit to such a test. There must be a *limit* to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Birchfield*, 136 S. Ct. at 2185 (emphasis added). Thus, the *Birchfield* Court reiterated the lawfulness of implied-consent laws that impose "civil penalties and evidentiary consequences" on motorists who refuse to submit to a blood draw. *Id.* Importantly, in adding that it is "another matter" for a state to impose "criminal penalties" on the refusal to submit to a blood draw, the Court also specifically distinguished "civil penalties" and "evidentiary consequences" from the ambit of what it considered to be "criminal penalties." *See id.* Thus, pursuant to *Birchfield*, a State may not make a drunk-driving suspect's refusal a crime itself, but may impose civil penalties and "evidentiary consequences" on such refusals.[4] *Id.*

¶13 Two years later, our state supreme court decided *Dalton*. In that case, a circuit court sentenced OWI-defendant Dalton to a longer jail sentence "for the sole reason that he refused to submit to a blood test." *Dalton*, 383 Wis. 2d 147, ¶60. Holding on appeal that a sentence that is extended solely on this basis is unlawful, the *Dalton* court expressed that the *Birchfield* Court had "emphasized that criminal penalties may not be imposed for a refusal" and "[a] lengthier jail sentence is certainly a criminal penalty." *Dalton*, 383 Wis. 2d 147, ¶¶58-59. Significant for the case now before us, however, the *Dalton* court also recognized that "the

---

[4] As the State correctly notes: "Levanduski does not explain what else the *Birchfield* [*v. North Dakota*, 136 S. Ct. 2160 (2016),] Court could have meant by 'evidentiary consequences' if it did not mean 'use of refusal as evidence.' After all, what is the use of the refusal as evidence if it is not an 'evidentiary consequence' of a refusal?"

8

*Birchfield* court *acknowledged* that 'prior opinions [(specifically *McNeely* and *Neville*)] have referred *approvingly* to the general concept of implied-consent laws that impose civil penalties *and evidentiary consequences* on motorists who refuse to comply'." *Dalton*, 383 Wis. 2d 147, ¶58 (citation omitted). The *Dalton* court then quoted the *Birchfield* Court's statements that "[i]t is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test" and "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Dalton*, 383 Wis. 2d 147, ¶58 (citation omitted). Thus, the *Dalton* court, like the *Birchfield* Court, acknowledged that imposing "civil penalties and evidentiary consequences" on drunk-driving suspects who refuse to submit to a blood draw is lawful under the Fourth Amendment, but that imposing "criminal penalties" for a refusal is not. *Dalton*, 383 Wis. 2d 147, ¶58.[5]

¶14    Relying heavily upon the *Birchfield/Dalton* language that "[t]here must be a *limit* to the consequences to which motorists may be deemed to have

---

[5] We recognize that in *Dalton* our supreme court stated at one point that "[p]ursuant to the circuit court's unequivocal sentencing remarks, Dalton was criminally punished for exercising *his constitutional right*." *See State v. Dalton,* 2018 WI 85, ¶61, 383 Wis. 2d 147, 914 N.W.2d 120 (emphasis added). Read within the entirety of the decision, it is clear the court meant the Fourth Amendment right to be free from unreasonable warrantless searches and seizures, and under *Birchfield*, Dalton could not suffer a *criminal penalty* due solely to his refusal to submit to a blood draw. *See Birchfield*, 136 S. Ct. at 2185-86; *Dalton*, 383 Wis. 2d 147, ¶¶57-66. Criminal penalties for refusal under an implied consent law impermissibly burden and penalize that right; civil penalties and evidentiary consequences do not. Thus, criminal penalties are beyond the constitutional "limit" of one's consent under an implied consent statute, but civil penalties and evidentiary consequences are not. *See Dalton*, 383 Wis. 2d 147, ¶58. Furthermore, as noted, *see supra* ¶9, our supreme court also specifically stated in *State v. Zielke*, 137 Wis. 2d 39, 49-51, 403 N.W.2d 427 (1987), and *State v. Bolstad*, 124 Wis. 2d 576, 585-86, 370 N.W.2d 257 (1985), that the fact of a defendant's refusal to submit to a blood draw may be lawfully used against the defendant in a trial on the substantive OWI charge, and the *Dalton* court does not even mention those cases much less provide any suggestion that it was overruling them on this point.

consented by virtue of a decision to drive on public roads," Levanduski conclusorily argues that "[u]sing a person's refusal against them in court to argue they are guilty of a crime falls under the broad definition of a criminal penalty." Fatal to Levanduski's argument, however, are the ***Birchfield***/***Dalton*** sentences immediately preceding the one upon which she relies. Again, in those prior sentences, the ***Dalton*** and ***Birchfield*** courts clearly "acknowledge[]" that "civil penalties *and evidentiary consequences*" are distinct from "criminal penalties" and that imposing the former on defendants who refuse to submit to a blood test are within that "limit," while

imposing the latter are outside of it. ***Birchfield***, 136 S. Ct. at 2185 (emphasis added); ***Dalton***, 383 Wis. 2d 147, ¶58, ¶80 (Roggensack, C.J., dissenting).[6]

¶15 Based upon the foregoing, we conclude that when the officer read Levanduski the Informing-the-Accused statement, "If you refuse to take any test that this agency requests … the fact that you refused testing can be used against you in court," he correctly stated the law. Because the officer correctly stated the law, Levanduski's consent to the blood draw was voluntary, and the results of the blood test may be used against her at trial. And because the circuit court granted Levanduski's suppression motion based upon an incorrect understanding of the law, we reverse the order granting the motion and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

[6] As the State points out, like the ***Dalton*** court, numerous other state courts also have recognized that ***Birchfield*** reinforced that states may lawfully "impose civil penalties *and evidentiary consequences* on motorists who refuse to comply" with a request for a blood draw. ***Birchfield***, 136 S. Ct. at 2185. *See **People v. Nzolameso***, 252 Cal. Rptr. 3d 589, 595 (Cal. Ct. App. 2019) (indicating that "***Birchfield*** made clear that its holding barring warrantless blood tests on pain of criminal penalty should not be read to 'cast doubt' on the constitutionality of 'implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply' with blood tests" (citation omitted)); ***Fitzgerald v. People***, 2017 CO 26, ¶¶25-26, 394 P.3d 671 (holding that ***Birchfield*** did not impact Colorado's law that "allows a driver's refusal to submit to testing to be entered into evidence if the driver is prosecuted for DUI" and adding that ***Birchfield*** indicated that "anything short of criminalizing refusal does not impermissibly burden or penalize a defendant's Fourth Amendment right to be free from an unreasonable warrantless search," so "introducing evidence of [a defendant's] refusal to consent to a blood or breath test … did not impermissibly burden his Fourth Amendment right"*); **Commonwealth v. Brown***, 560 S.W.3d 873, 878 (Ky. Ct. App. 2018) (citing ***Birchfield***, ***Missouri v. McNeely***, 569 U.S. 141 (2013), and ***South Dakota v. Neville***, 459 U.S. 553 (1983) in recognizing that "Supreme Court opinions have repeatedly affirmed statutory schemes which impose administrative or civil sanctions or create evidentiary penalties" for a drunk driving suspect who refuses to submit to a blood draw); ***State v. LeMeunier-Fitzgerald***, 2018 ME 85, ¶26, 188 A.3d 183 (finding constitutional Maine's law requiring an officer to warn an OWI suspect that refusing to submit to a blood test is admissible against the suspect in court and stating that the ***Birchfield*** Court determined that "neither the threat of evidentiary use of the refusal nor the threat of license suspension renders the consent involuntary"); ***State v. Hood***, 917 N.W.2d 880, 892-93 (Neb. 2018) (noting that ***Birchfield*** "clarified that the propriety of evidentiary consequences for a driver's refusal to submit to a blood draw should not be questioned" and holding that "evidence of a driver's refusal to submit to a warrantless blood draw is admissible in a DUI prosecution"); ***State v. Storey***, 2018-NMCA-009, ¶¶39, 43, 410 P.3d 256 (noting that the ***Birchfield*** Court distinguished between "criminalizing the refusal to take a [blood test] (which it deemed unconstitutional as a proposed exception under the consent doctrine) and using that refusal as evidence of consciousness of guilt on the underlying driving while intoxicated offense (which it signaled is constitutional)" and concluding that "***Birchfield*** does not prohibit the introduction of evidence of, and commentary on, evidence establishing a defendant's refusal to take a blood test"); ***People v. Vital***, No. 2016NY041707, unpublished slip op. (N.Y. Crim. Ct. Jan. 20, 2017) (concluding that ***Birchfield*** did not affect New York's OWI law that imposes civil penalty (license suspension) and evidentiary consequences (admission at trial of defendant's refusal to submit to a blood test)); ***Commonwealth v. Bell***, 211 A.3d 761, 775-76 (Pa. 2019) (noting that the ***Birchfield*** Court "did not back away from its prior approval of [using a suspect's refusal against the suspect as an] "evidentiary consequence[]" and holding that Pennsylvania's statutory "evidentiary consequence" of allowing "the admission of that refusal at a subsequent trial for DUI—remains constitutionally permissible post-***Birchfield***"); ***Dill v. State***, No. 05-15-01204-CR, unpublished slip op. at *3 (Tex. App. Jan. 11, 2017) (holding that the admission of evidence of a defendant's refusal did not violate the Fourth Amendment and adding that it was bound by **Neville** and expressing that "in ***Birchfield***, the Supreme Court acknowledged the continued validity of *Neville*"); ***State v. Rajda***, 2018 VT 72, ¶30, 196 A.3d 1108 (noting that in ***Birchfield*** "the Court went out of its way to endorse the constitutionality of implied consent laws and strongly suggested that consequences for refusing a blood test short of criminal prosecution—such as civil and evidentiary consequences—were not constitutionally infirm"); ***Johnson v. Commonwealth***, No. 1591-18-1, unpublished slip op. at *15 (Va. Ct. App. Feb. 18,

(co

2020) (concluding that "[t]he holding in ***Birchfield*** should not be read to cast doubt on 'laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply'" (citing ***Birchfield***, 136 S. Ct. at 2185)); *see also* ***Dortch v. State***, 2018 Ark. 135, 14, 544 S.W.3d 518, 526-27 (recognizing that the ***Birchfield*** Court "noted that its 'prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply'" (citation omitted)); ***Olevik v. State***, 806 S.E.2d 505 (Ga. 2017) (same); ***State v. Charlson***, 377 P.3d 1073, 1078 (Idaho 2016) (same); ***State v. Ryce***, 396 P.3d 711, 716 (Kan. 2017) (same); ***People v. Stricklin***, 935 N.W.2d 59, 64 (Mich. Ct. App. 2019) (same); ***Vondrachek v. Commissioner of Pub. Safety***, 906 N.W.2d 262, 269 (Minn. Ct. App. 2017) (same); ***State v. Romano***, 800 S.E.2d 644, 652 (N.C. 2017) (same); ***Schoon v. North Dakota DOT***, 2018 ND 210, ¶19, 917 N.W.2d 199, 205 (same); ***State v. Barnhart***, 2019-Ohio-1184, ¶23, (Ohio Ct. App.) (same); ***State v. Reynolds***, 504 S.W.3d 283, 307 (Tenn. 2016) (same); ***State v. Baird***, 386 P.3d 239, 247 (Wash. 2016) (same). *But see* ***McCarthy v. Commonwealth***, No. 2017-CA-001927-MR, unpublished slip op. (Ky. Ct. App. June 14, 2019), *review granted*, (Ky. Dec. 13, 2019).

3