COURT OF APPEALS
DECISION
DATED AND FILED

September 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP353**

Cir. Ct. No. **2020TR8289**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN THE MATTER OF THE REFUSAL OF ALBERT A. TERHUNE:

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ALBERT A. TERHUNE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Sauk County: PATRICIA A. BARRETT, Judge. *Affirmed*.

¶1    BLANCHARD, J.[1]    Albert Terhune appeals a judgment revoking his motor vehicle operating privileges for unlawfully refusing to submit

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

to chemical testing under Wisconsin's implied consent law, WIS. STAT. § 343.305. Terhune refused chemical testing after a state trooper pulled him over for speeding and extended the mission of the stop to investigate possible drunk driving. The extension included having Terhune undergo field sobriety testing and requesting that he submit to a test of his breath. Terhune contends that the judgment of refusal must be reversed because there was not reasonable suspicion of drunk driving sufficient to justify the trooper extending the mission of the stop, and because the trooper lacked both probable cause to arrest Terhune and also the level of probable cause necessary to justify the breath sample request. Based on these same grounds, Terhune contends that the circuit court erred in denying his motion to suppress evidence in a hearing that was separate from the refusal hearing held under § 343.305. In the alternative, Terhune argues that § 343.305 is unconstitutional. I reject each of these arguments. Accordingly, I affirm the revocation judgment.

## BACKGROUND

¶2 A Wisconsin State Patrol trooper pulled over Terhune for alleged speeding. During the stop, the trooper began investigating a suspicion that Terhune had operated his car while under the influence of alcohol (OWI), including by administering field sobriety tests. After conducting the tests, the trooper arrested Terhune.

¶3 The trooper requested that Terhune submit to a test of his breath and read Terhune an "Informing the Accused" form. *See* WIS. STAT. § 343.305(4); ***State v. Reitter***, 227 Wis. 2d 213, 225, 595 N.W.2d 646 (1999). Terhune refused, and the trooper issued Terhune a notice of intent revoke his operating privileges.

2

¶4    In addition to the refusal citation at issue in this appeal, the State also cited Terhune for an OWI offense (Sauk County Case No. 20TR8214). At this time, the OWI citation remains pending in the circuit court.

¶5    Terhune requested a refusal hearing.

¶6    Terhune filed a suppression motion in both the refusal case and the OWI case. Terhune argued that the trooper unlawfully extended the mission of the traffic stop in directing Terhune to exit his car and asking Terhune questions related to whether he had been drinking alcohol, because there was not reasonable suspicion to extend the mission of the traffic stop to ask whether he had been drinking. In the alternative, Terhune argued that the trooper requested that Terhune submit to a breath test without probable cause, focusing in particular on the reliability of the field sobriety tests. As relief, Terhune requested that the court suppress evidence obtained following the extension of the traffic stop or, alternatively, suppress evidence obtained as a result of the allegedly unlawful breath test request.

¶7    The circuit court held an evidentiary hearing on Terhune's suppression motion. However, at the prosecution's request, the court limited the scope of the hearing to the extension-of-the-stop issue and excluded the taking of evidence regarding the argument that the trooper lacked probable cause to request a breath test. The court appeared to base this on the ground that Terhune's suppression motion failed to state a clear basis for challenging the reliability of the trooper's administration of field sobriety tests.

¶8    The trooper testified as the sole witness. The court determined that there was reasonable suspicion to extend the mission of the stop.

¶9 Terhune also moved to dismiss the refusal case on the ground that the implied consent statute, WIS. STAT. § 343.305, is unconstitutional because it impermissibly burdens the ability of motorists to invoke their Fourth Amendment right to be free from unreasonable searches and Fifth Amendment right to remain silent. The circuit court denied the motion.

¶10 The circuit court then held a refusal hearing over the course of two days. The trooper was again the sole witness. Terhune again argued that there was not reasonable suspicion to extend the traffic stop to investigate an OWI offense and also whether there was the necessary level of probable cause to request a breath test. He also contested whether there was probable cause justifying an arrest. The circuit court found that Terhune refused to submit to chemical testing and determined that his refusal was unreasonable. Terhune appeals.

## DISCUSSION

¶11 Terhune argues that the circuit court erred by denying his suppression motion, including by rejecting his argument that there was not probable cause to request a breath test without holding a separate evidentiary hearing. He further contends that the court erred in determining that his refusal was unreasonable, renewing the arguments from his suppression motion and from the refusal hearing that there was not reasonable suspicion or probable cause. He also challenges the constitutionality of WIS. STAT. § 343.305.

¶12 A defendant is entitled to an evidentiary hearing on a pretrial motion when the motion "'alleges facts which, if true, would entitle the defendant to relief.'" *State v. Radder*, 2018 WI App 36, ¶10, 382 Wis. 2d 749, 915 N.W.2d 180 (quoting *State v. Velez*, 224 Wis. 2d 1, 11, 589 N.W.2d 9 (1999)). However,

no hearing is required when the record "'conclusively demonstrates that the defendant is not entitled to relief.'" *Id.*, ¶11 (quoted source omitted). I review de novo "[w]hether a motion alleges sufficient, nonconclusory facts to require an evidentiary hearing" and whether "the record conclusively demonstrates that the defendant is not entitled to relief." *See id.*, ¶¶10-11 & n.5.

¶13 Terhune challenges the circuit court's refusal hearing determination based on the lawfulness of his arrest, which he in turn bases exclusively on constitutional grounds. *See* WIS. STAT. § 343.305(9)(a)5.a.; *State v. Anagnos*, 2012 WI 64, ¶¶27, 41-42, 341 Wis. 2d 576, 815 N.W.2d 675. This raises issues of "constitutional fact," which present mixed issues of law and fact. *See Anagnos*, 341 Wis. 2d 576, ¶21. I "review the circuit court's findings of historical fact under the clearly erroneous standard" and apply those historical facts to the constitutional principles independently. *See id.*; *see also State v. Wilson*, 2022 WI 77, ¶18, 404 Wis. 2d 623, 982 N.W.2d 67 ("A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence.").

¶14 I review de novo the circuit court's resolution of Terhune's challenge to the constitutionality of WIS. STAT. § 343.305. *See State v. Prado*, 2021 WI 64, ¶17, 397 Wis. 2d 719, 960 N.W.2d 869. Terhune bears the burden to demonstrate that the statute is unconstitutional "beyond a reasonable doubt." *See id.*

### I. Suppression Motion

¶15 Terhune contends that the circuit court erred in rejecting his argument that there was an insufficient basis to extend the stop, following an evidentiary hearing on that topic, and that the court further erred in rejecting his argument that there was not probable cause to request a breath test without

allowing him to present evidence on that topic at the suppression hearing. I address the merits of Terhune's extension-of-the-stop argument further below, concluding that the trooper had reasonable suspicion to extend the mission of the traffic stop. As to the court's decision not to hold a hearing on the breath test portion of Terhune's motion, I conclude that he fails to show that his suppression motion alleged facts that, if true, entitled him to relief for the purposes of the refusal case at issue in this appeal. *See Radder*, 382 Wis. 2d 749, ¶12.

¶16 As noted, the exclusive form of relief requested in Terhune's motion was the suppression of evidence. In this context, "discussion of 'suppression' and the exclusionary rule is somewhat beside the point" when determining whether, under WIS. STAT. § 343.305, the person was "lawfully placed under arrest." *Anagnos*, 341 Wis. 2d 576, ¶25 n.7. Thus, whether Terhune's motion alleged facts entitling him to suppression of evidence has no bearing on the relief actually available to the cited person in a refusal proceeding, namely, that the circuit court must "order that no action be taken on the operating privilege" based on the refusal if one of the issues raised at the proceeding is "determined favorably to the person." *See* § 343.305(9)(d); *Anagnos*, 341 Wis. 2d 576, ¶25 & n.7.[2]

¶17 Here, Terhune was ultimately afforded the opportunity to challenge the revocation of his operating privileges based on evidence that he argued showed that the arrest and the request for the breath test violated the Fourth Amendment. It is true that the circuit court applies different standards to this evidence at a

---

[2] Because I reject Terhune's suppression motion argument on the ground that his motion did not request relief pertinent to the refusal determination that is the subject of this appeal, I do not reach Terhune's arguments that his written motion articulated sufficient facts to require the circuit court to hold a suppression hearing to address his probable cause argument in the criminal case charging OWI.

suppression hearing as opposed to a refusal hearing. *See **State v. Wille***, 185 Wis. 2d 673, 681, 518 N.W.2d 325 (Ct. App. 1994) ("The State's burden of persuasion at a refusal hearing is substantially less than at a suppression hearing."). However, Terhune does not develop a legally supported argument explaining how the court's partial consideration of these same arguments under the more favorable standards in the earlier suppression hearing created a reversible error in this appeal of the court's refusal determination or otherwise prejudiced his ability to defend himself in the refusal proceeding.[3]

¶18    Looked at from another angle, to the extent that Terhune's argument about the breath test request fails on the merits, given factual findings that were made by the circuit court and the evidence in the record, the record "conclusively demonstrates" that he is not entitled to relief. *See **Radder***, 382 Wis. 2d 749, ¶11. For reasons explained below, I agree with the circuit court's determination at the refusal hearing that there was probable cause to believe that Terhune had committed an OWI offense, justifying the arrest and the request that Terhune submit to a breath test.

## II. Refusal Hearing

¶19    Under Wisconsin's implied consent law, when a law enforcement officer arrests a person for an OWI-related offense, the officer may "request the person to provide one or more samples of [their] breath, blood or urine" for the

---

[3] Terhune argues that the circuit court erred in declining to reconsider its denial of his suppression motion based on testimony adduced at the refusal hearing that was unavailable to Terhune at the suppression hearing. Assuming that this argument is properly raised in this appeal, I reject it for reasons explained below in addressing the merits of Terhune's Fourth Amendment-based arguments.

purpose of chemical testing. WIS. STAT. § 343.305(2), (3)(a); *see also* WIS. STAT. § 346.63(1). If the person refuses to submit to chemical testing, the officer is to inform the person of the State's intent to immediately revoke the person's operating privileges, § 343.305(9)(a), and that the person may request a refusal hearing in court, § 343.305(9)(a)4. The issues that a defendant is permitted to raise during a refusal hearing are limited by statute to those set forth in § 343.305(9)(a)5. *See* § 343.305(9)(c). Pertinent to Terhune's arguments, the two issues that may be raised as a defense are: "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol [or committed another OWI-related offense]" and "whether the person was lawfully placed under arrest for [an OWI-related offense]." *See* § 343.305(9)(a)5.a.; *see also **Anagnos***, 341 Wis. 2d 576, ¶27.[4]

¶20 A person can challenge the lawfulness of an arrest under WIS. STAT. § 343.305(9)(a)5.a. based on the unlawfulness of the traffic stop that led up to the arrest. *See **Anagnos***, 341 Wis. 2d 576, ¶4. The State does not dispute that, applied here, this means that Terhune can challenge the lawfulness of his arrest by alleging that the trooper extended the mission of the traffic stop for speeding to investigate drunk driving without having reasonable suspicion of drunk driving. In referring to drunk driving, I mean driving while impaired by alcohol or with a prohibited alcohol concentration as prohibited by WIS. STAT. § 346.63(1).

---

[4] Regarding the other issues that can be addressed at refusal hearings generally, Terhune does not dispute that the trooper complied with WIS. STAT. § 343.305(4) by reading to Terhune from the "Informing the Accused" form, nor does Terhune dispute that he in fact refused to submit to the breath test. *See **State v. Anagnos***, 2012 WI 64, ¶27, 341 Wis. 2d 576, 815 N.W.2d 675; § 343.305(9)(a)5., (c).

¶21 The State's burden of proof at a refusal hearing is to show that the arresting officer's "account is plausible, and the [circuit] court will not weigh the evidence for and against probable cause or determine the credibility of the witnesses." *See Wille*, 185 Wis. 2d at 681.

*Additional Background*

¶22 The following summarizes the trooper's testimony from the suppression motion hearing and the refusal hearing, which was the only evidence presented at these hearings. Although the trooper's testimony in the two hearings varied in the level of detail on certain topics, his testimony was substantially consistent. I address Terhune's arguments to the contrary below.

¶23 The trooper initiated the traffic stop at about 7:20 p.m. on Saturday, November 14, 2020. The trooper observed the car being operated by Terhune driving approximately 85 miles per hour on an interstate highway where the speed limit was 70, before Terhune took an exit off the highway. The trooper, driving his official vehicle, followed Terhune's car for approximately 30 seconds. During that time, Terhune's car "did not stay in" the same lane, but instead it "appeared as if it took a wide turn and then crossed two … lanes into the turning lane." The trooper then activated the emergency light package on his official vehicle and Terhune pulled over.

¶24 The trooper approached the passenger side of the car. The trooper observed two occupants through the open passenger window: Terhune in the driver's seat and a passenger in the front passenger seat. The trooper smelled the odor of alcoholic beverages and also "cologne or perfume," but the trooper could not tell where in the car any of these odors were coming from. The smell of cologne or perfume was notable to the trooper because it can be used as a

"masking agent" to try to cover up the smell of alcohol or controlled substances such as marijuana.[5]

¶25    Still standing by the passenger window, the trooper asked Terhune where the two were coming from.  Terhune responded that they had been at an ax throwing event in the Wisconsin Dells area.  The trooper considered this notable because, to the trooper's knowledge, the consumption of alcohol is "typically" "involved" at ax throwing events.  The trooper asked Terhune to provide his driver's license and proof of insurance.  In an attempt to comply with this request, Terhune brought information up on his phone.  Terhune exhibited "slow dexterity" in that he had "slow fingers" and dropped his phone while reaching across the passenger seat to hand it to the trooper.

¶26    The trooper asked Terhune to get out of the car.  After Terhune did so, Terhune "slight[ly] stumble[d]" or "sway[ed]" as he walked.  The trooper asked Terhune how much alcohol he had consumed.

¶27    While talking with Terhune outside of his car, the trooper smelled the odor of alcohol coming from Terhune's breath.  Terhune answered the trooper's initial question by saying that Terhune "didn't drink" that night.  But, after the trooper told Terhune that the trooper smelled alcohol on his breath, Terhune said that he had consumed "one cup of beer."

---

[5] The trooper testified that he had "a little over two years" of experience as a trooper at the time of the suppression hearing, which occurred approximately one year after he stopped Terhune.  The trooper also testified that he had received training on conducting investigations of suspected drunk driving.

¶28    After this exchange, the officer conducted a "slight[ly] modified" or "shorter version" of the standard horizontal gaze nystagmus test. The trooper instructed Terhune to get back into his car and drive into a nearby parking lot, where the trooper then administered additional field sobriety tests. Terhune displayed signs of intoxication on each of the three tests administered.

¶29    After the tests, the trooper requested that Terhune provide a breath sample. Terhune refused to provide this sample, and the trooper arrested him. The trooper read to Terhune the standard Informing the Accused form verbatim and again requested that Terhune submit to a breath test. Terhune again refused.

¶30    On the topic of reasonable suspicion to extend the traffic stop, the circuit court made findings that credited the trooper's testimony. The court considered and rejected Terhune's argument that the trooper's decision to have Terhune get back into his vehicle and drive into a nearby parking lot undermined the trooper's credibility. The argument was that the trooper's decision to have the allegedly impaired Terhune get back behind the wheel and drive raised an issue about how impaired Terhune could actually have appeared to the trooper. At the conclusion of the refusal hearing, Terhune "reraise[d] [his] suppression motion in its entirety," asserting in part that the trooper lacked reasonable suspicion to extend the stop. In response, the court declined to "reopen the suppression hearing." The court commented later in the same hearing that there was no "real difference in the testimony" by the trooper between the suppression hearing and the refusal hearing on the topic of "what the officer knew at the time that he first stopped Mr. Terhune."

¶31    On the topic of probable cause to request a breath test, the circuit court found that it could "reasonably rely on the field sobriety tests" to provide a

basis. The court took into account the deviations from standard field sobriety test protocols made by the trooper, as identified by Terhune. However, the court concluded that these deviations created mere "possibilities" that the tests were not accurate and rejected Terhune's contention that because of the deviations the trooper had to "ignore[]" the results of the field sobriety tests as he administered them.

*Reasonable Suspicion to Extend Traffic Stop*

¶32    Our supreme court has explained the following regarding reasonable suspicion in this context:

> "There is no question that a police officer may stop a vehicle when he or she reasonably believes the driver is violating a traffic law ...." However, "a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ... ticket."
>
> After a justifiable stop is made, the officer may expand the scope of the inquiry only to investigate "additional suspicious factors [that] come to the officer's attention."

*State v. Hogan*, 2015 WI 76, ¶¶34-35, 364 Wis. 2d 167, 868 N.W.2d 124 (quoted and cited sources omitted). The reasonableness of an extension of a stop is tested in the same manner as the reasonableness of the initial stop. *See State v. Adell*, 2021 WI App 72, ¶¶16, 19, 399 Wis. 2d 399, 966 N.W.2d 115; *State v. Young*, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729 ("Reasonable suspicion requires that a police officer possess specific and articulable facts that warrant a reasonable belief that criminal activity is afoot" and is more than "[a] mere hunch."). The issue is whether "'additional suspicious factors'" arise during the course of the stop "'sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the

acts that prompted the officer's intervention in the first place.'" *See Adell*, 399 Wis. 2d 399, ¶16 (quoted sourced omitted). This is determined based on "'the totality of the … circumstances'" and what a reasonable officer would "reasonably suspect in light of [the officer's] training and experience.'" *See id.*, ¶17 (quoted source omitted).

¶33 In applying these reasonable suspicion and stop extension standards here, I assume that the trooper extended the speeding stop into an investigation into possible drunk driving when the trooper asked Terhune if he had been drinking. The following factors support the conclusion that the trooper had reasonable suspicion at that time justifying the extension of the stop:

- Terhune drove 85 in a 70-miles-per-hour zone.

- Terhune drove "erratically through several lanes of traffic."

- The odor of intoxicants and cologne or perfume coming from within the car, because in the officer's experience and training cologne is sometimes used in attempts to "mask" the odor of intoxicants.

- Terhune's poor dexterity in manipulating the phone to access insurance information and then dropping the phone.

- Terhune's statement that he was coming from an ax throwing event, which in the officer's experience often involves alcohol consumption.

- After Terhune got out of the car, he walked with what the trooper described at varying points as a "slight stumble" or "sway." The circuit court, having viewed an audiovisual recording of the trooper's interaction with Terhune, characterized Terhune's walk as "almost sort

of [like a] seesaw" or with "a side-to-side motion" that was "certainly … not a typical way of … walking."[6]

¶34 Together these constitute articulable facts that strongly support reasonable suspicion that Terhune was operating a motor vehicle while impaired or with a prohibited alcohol concentration.

¶35 Terhune argues that his wide turn through several lanes should be given no weight. This is because, he contends, the trooper also testified at the suppression hearing that the trooper "did not observe Mr. Terhune commit any traffic infractions" besides speeding, and testified at the refusal hearing that he did not notice the wide turn until reviewing the dash cam recording later. This argument fails for two reasons. First, Terhune fails to show that the circuit court clearly erred in finding that Terhune drove "erratically" in the form of the wide turn crossing multiple lanes. Terhune's driving can be clearly seen in the dash cam recording, and Terhune makes no effort to show that the court could not reasonably interpret the video to support its finding. Second, as the State points out, the fact that the trooper testified that he subjectively failed to notice the erratic turn in deciding to extend the mission of the traffic stop is irrelevant to the objective determination of whether there was reasonable suspicion to extend the

---

[6] Terhune does not suggest that there was evidence that the circuit court was obligated to credit that he had any form of physical disability or abnormality that could have been responsible for an unusual way of walking.

Separately, consistent with his position in the circuit court, Terhune does not argue that the officer asking him to exit the car, in itself, counts as a constitutionally meaningful extension of the stop. *See State v. Floyd*, 2017 WI 78, ¶¶24, 26-27, 377 Wis. 2d 394, 898 N.W.2d 560 (an officer's request to have a motorist get out of a vehicle incident to a valid traffic stop is "of no constitutional moment"; this is a "negligibly burdensome precaution[]" to ensure officer safety which is an inherent part of the mission of all traffic stops (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam))).

stop. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("'[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" (quoted source omitted)); *State v. Kyles*, 2004 WI 15, ¶30 n.22, 269 Wis. 2d 1, 675 N.W.2d 449. In reply, Terhune cites to an opinion that only serves to reinforce the State's position. *See State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990) (facts relevant to reasonable suspicion analysis "must be judged against an 'objective standard: would the facts *available* to the officer at the moment of seizure'" justify the officer's actions? (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)) (emphasis added)).[7]

¶36 Terhune asserts that the trooper's testimony that variously characterized Terhune's walking as a "slight stumble" or "sway" was contradicted by the dash cam video. As noted, based on its review of the dash cam video, the circuit court appeared to credit the trooper's testimony to the extent that he was attempting to describe something about Terhune's walking that, in the court's words, was "not a typical way of … walking." This is reasonably supported by my own review of the video recording in the record.

¶37 Terhune argues that the circuit court erred in crediting the trooper's testimony based on the trooper's decision to have Terhune get back into his car

---

[7] On a related point, Terhune contends that the circuit court should have reconsidered its rejection of his reasonable suspicion argument at the refusal hearing on the ground that the trooper's testimony at the refusal hearing "contradicted" his suppression hearing testimony. I reject the argument for at least the reason that Terhune does not identify contradictions, or even tension, between the trooper's testimony between the two hearings that the court was required to treat as irreconcilable.

and drive to a nearby parking lot for further field sobriety testing. Whether viewed under standards for a suppression hearing or a refusal hearing, Terhune fails to establish that the court could not reasonably determine that the trooper's testimony was both plausible and credible. *See Wille*, 185 Wis. 2d at 681-82 (circuit court in a refusal hearing "'simply must ascertain the plausibility of a police officer's account'" (quoting *State v. Nordness*, 128 Wis. 2d 15, 36, 381 N.W.2d 300 (1986))); *State v. Hughes*, 2000 WI 24, ¶2 n.1, 233 Wis. 2d 280, 607 N.W.2d 621 (appellate court "will uphold a [circuit] court's determination of credibility unless that determination goes against the great weight and clear preponderance of the evidence"). Even if the prudence of the decision might be questioned, the trooper's decision to direct Terhune to drive his car a short distance despite the signs of intoxication does not render implausible or require the circuit court to find incredible the trooper's entire account, including the parts that revealed Terhune's possible impairment.

*Probable Cause to Arrest and Request Breath Test*

¶38    In the context of applying the implied consent statute, an officer may request that a person provide a sample of the person's breath when the officer has "probable cause to believe" that that person was committing an OWI offense. *See* WIS. STAT. §§ 343.303, 343.305(3)(a), (9)(a)5.a., (d). "Probable cause to believe" is a quantum of proof that is greater than reasonable suspicion, but less than the quantum needed for probable cause to make an arrest. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999). Thus, a proper request for a test requires more than an reasonable belief rooted in articulable facts that a crime is afoot, *see Young*, 294 Wis. 2d 1, ¶21, but less than the quantum of evidence that "'would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime,'" *State v. Moore*, 2023 WI 50, ¶8, 408

16

Wis. 2d 16, 991 N.W.2d 412 (quoted source omitted). As noted, however, one issue that may be raised in a refusal hearing is whether the person "was lawfully placed under arrest." *See* § 343.305(9)(a)5.a. And, while Terhune's arguments are sometimes difficult to track, I understand him to suggest that there was not sufficient evidence to constitute probable cause to arrest either before the officer read to him from the Informing the Accused form or requested a breath test for a second time. The State appears to take the position that the facts support the conclusion that both of the trooper's decisions to arrest Terhune and to request a breath test were justified under constitutional standards. For the following reasons, I agree.

¶39 In addition to each of the facts noted above that cumulatively support the conclusion that reasonable suspicion existed to extend the mission of the traffic stop, the following facts support the conclusion that the objective facts provided probable cause that Terhune had committed an OWI offense, justifying the trooper's arrest of Terhune and his request that Terhune submit to a breath test:

- Terhune initially denied that he had drunk alcohol at all that night, and it was only after the trooper told Terhune that the trooper could smell alcohol on Terhune's breath that Terhune admitted to drinking one cup of beer—under the circumstances, the officer could reasonably suspect that this was a complete lie followed by extreme minimization.

- Terhune exhibited multiple clues of impairment on each of the three field sobriety tests that the trooper administered.

¶40 Even taking into account the officer's testimony that he deviated from the standard field sobriety tests in a way that failed to optimize their reliability, the facts available to the trooper at the time of arrest were sufficient to justify the arrest. The trooper had evidence that could lead the trooper to reasonably believe that Terhune consumed alcohol at times that at least included

the ax throwing event, based on Terhune's statements and observable signs, including but not limited to the smell of alcohol on his breath. Additional evidence strongly supported a reasonable belief that this consumption had probably left him impaired—the speeding, poor driving, slow dexterity, phone dropping, irregular walk, and signs of impairment during the field sobriety tests.

¶41 On appeal, Terhune renews arguments focusing on deviations that the trooper made in administering the field sobriety tests from established standards under which the trooper was trained to generally administer such tests. For example, he contends that the trooper "improperly told Terhune to tuck his chin down" during the horizontal gaze nystagmus test, "which could induce positional alcohol nystagmus." Terhune's only attempt to explain the significance of "positional alcohol nystagmus," or the effects of other alleged deficiencies in the administration of the field sobriety tests, is to note that the trooper acknowledged at a high level of generality that deviating from training standards in administering such tests "may compromise the accuracy of the results."

¶42 This fails to show that the circuit court erred in giving at least some weight to the tests, despite the deviations acknowledged by the trooper at the refusal hearing. *See City of W. Bend v. Wilkens*, 2005 WI App 36, ¶1, 278 Wis. 2d 643, 693 N.W.2d 324 (procedures used by officer administering field sobriety tests "go to the weight of the evidence, not its admissibility"; deviations from standardized administration in that case did not render field sobriety test evidence "without probative value"). As noted, the court acknowledged that such deviations can create the possibility of reduced reliability in test results, but that such possibility went to the weight of the results, which the court considered to be meaningful despite the deviations. Terhune's assertion that the trooper's field

18

sobriety test observations should be "accorded no evidentiary weight" is conclusory and unsupported by references to facts in the record.

### III. Constitutionality of Implied Consent Statute

¶43 Terhune renews his argument that dismissal of the refusal proceedings is required because Wisconsin's implied consent statute is unconstitutional. This is so, he contends, because "it prospectively threatens to punish people for exercising their Fourth Amendment right to refuse to provide voluntary consent, and their Fifth Amendment right to remain silent without penalty in criminal cases."[8] More specifically, he contends that, because the implied consent statute imposes penalties on drivers who refuse to consent to having a sample of their breath, blood, or urine taken for chemical testing, this sampling and testing constitutes a search of the person without a warrant and also violates the person's right against compelled self-incrimination. I reject this argument as foreclosed by binding case law.

¶44 Pertinent here, WIS. STAT. § 343.305(2) requires that "[a]ny person who … drives or operates a motor vehicle upon the public highways of this state … is deemed to have given consent to one or more tests of his or her breath … for the purpose of determining the presence or quantity in his or her … breath, of alcohol." Terhune focuses in particular on the consequences imposed for failing to provide consent when requested by a law enforcement officer. These consequences are described in the statutorily prescribed informing the accused

---

[8] Terhune points out that the right against government compelled self-incrimination is also enshrined in Article I, § 8 of the Wisconsin Constitution. But he does not make any argument that treats the scope of the Wisconsin constitutional right differently than the federal constitutional right. Accordingly, I refer only to the federal constitutional rights.

form, which is to be read to motorists suspected of drunk driving: "If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court." *See* § 343.305(4).

¶45 Terhune argues that, in light of recent developments in constitutional case law by the U.S. and Wisconsin supreme courts, WIS. STAT. § 343.305 impermissibly penalizes a motorist "for exercising a constitutional privilege." *See Griffin v. California*, 380 U.S. 609, 614-15 (1965). In particular, Terhune notes that relatively recent constitutional case law has recognized a Fourth Amendment-based right to refuse to consent to warrantless blood draws. *See State v. Forrett*, 2022 WI 37, ¶8, 401 Wis. 2d 678, 974 N.W.2d 422 (citing *North Dakota v. Birchfield*, 579 U.S. 438 (2016); *Prado*, 397 Wis. 2d 719, ¶47). This right has the effect of prohibiting states from "'impos[ing] *criminal* penalties'" on a person who exercises the person's right to refuse a blood draw. *See id.*, ¶¶8-9 (emphasis added; quoted source omitted). As this court has explained, however, the United States Supreme Court has explicitly reinforced the constitutionality of states statutorily imposing "'civil penalties and evidentiary consequences'" of the kind that Terhune objects to in § 343.305. *See State v. Levanduski*, 2020 WI App 53, ¶¶10-14, 393 Wis. 2d 674, 948 N.W.2d 411 (quoting *Birchfield*, 579 U.S at 476-77).

¶46 Moreover, as Terhune appears to acknowledge in his reply brief, breath tests are not treated the same in Fourth Amendment-focused case law as blood tests—this law does not recognize a right to refuse a breath test incident to a legal OWI arrest. *See Forrett*, 401 Wis. 2d 678, ¶8 ("after an OWI arrest, a warrantless breath test is permissible as a reasonable search incident to an arrest but a warrantless blood draw is not" (citing *Birchfield*, 579 U.S at 474-76;

*Missouri v. McNeely*, 569 U.S. 141, 152-53 (2013))). I have explained why I reject Terhune's argument that he had a right to refuse the trooper's request for a breath test because the trooper lacked probable cause.

¶47 As to the right to remain silent under the Fifth Amendment, Terhune does not persuade me that the recognition of a Fourth Amendment-based right in cases such as *Birchfield* could have the effect of creating a right to refuse a breath test that is rooted in the Fifth Amendment. *See Levanduski*, 393 Wis. 2d 674, ¶7 (discussing *South Dakota v. Neville*, 459 U.S. 553 (1983)). For example, he provides no reason to believe that Fifth Amendment rights are an exception to *Levanduski*'s preservation of the ability of states to impose civil penalties and evidentiary consequences without violating the constitutional rights of motorists. *See Levanduski*, 393 Wis. 2d 674, ¶¶7-9.

## CONCLUSION

¶48 For all of these reasons, I affirm the circuit court's determination that Terhune's refusal to submit to a chemical test of his breath was unreasonable, and accordingly I reject Terhune's challenge to the revocation judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

21